Daniel E. Perry, et al., Plaintiffs-Appellees, v. Wade T. Campbell, Defendant. Allstate Insurance Company, Third Party Defendant-Appellant.

Gen. No. 11,674.

Second District, First Division.

December 20, 1963.

Rehearing denied February 13, 1964.

Hinshaw, Culbertson, Moelmann & Hoban, all of Chicago (John M. Moelmann, of counsel), and Diver, Diver & Ridge, of Waukegan, for Allstate Insurance Company, appellant.

Snyder, Clarke, Dalziel, Holmquist & Johnson, Runyard, Behanna, Conzelman & Lewis, all of Waukegan (Gerald C. Snyder and Alfred W. Lewis, of counsel), for appellees.

SMITH, J.:

■ Plaintiffs, members of one family, obtained their several judgments against defendant, Ward T. Campbell, totalling $135,250, arising out of an automobile accident. Executions on the judgments were returned unsatisfied. Plaintiffs then followed with a citation to discover assets against defendant and Allstate Insurance Company. The trial court found that Allstate was obligated on a policy of insurance with Campbell to pay the judgment to the extent of the policy limit of $100,000 and entered judgment for $116,875. The excess $16,875 represents interest. Allstate appeals. The legal issue is relatively simple. The facts not. The legal issue is whether or not Campbell was an insured of Allstate at the time of the accident on November 16, 1958.

Campbell testified that he applied for insurance to an Allstate agent on September 20, 1957. The agent prepared an application which he signed and advised him that he was covered for a two-year period. The application shows that the effective dates were to be, "9-21-57 to 9-21-59." The policy issued to Campbell

272

read, in part, "The policy period shall be as stated below and for such succeeding periods for which the required premium is paid. From September 21, 1957 to September 21, 1958." Quite obviously the policy on its face does not cover a November 16, 1958 accident. We must hence look elsewhere for coverage. Plaintiffs direct our attention to an Insurance Extension Certificate issued by Allstate which, they say, effected an extension of the policy to cover this date. Such was indeed mailed to Campbell with a premium payment notice. The Certificate read, in part,

> "Extension period
> From September 21, 1958
> To September 21, 1959,"

and concluded, "This Insurance Extension Certificate extends your policy for the period shown above upon payment of the premium indicated." $38.50 was the premium indicated on the Certificate and on an enclosed premium payment notice.

The accident, as we have seen, occurred on November 16. On November 21, after getting out of the hospital, Campbell called his Allstate agent and reported the accident. The agent, according to Campbell, consulted his file, and told him that he owed a premium of $38.50. He was told by the agent to send this amount and "We will take care of your accident," so Campbell says. Campbell found the premium payment notice, which the agent indicated had been sent to him and which Campbell had apparently overlooked, and on November 22, he sent such amount in with the notice as per the agent's instructions. The agent denies that the conversation took this drift but he does not deny the conversation. The drift, he says, related to reinstatement of insurance and that the conversation took place on December 3, not November 21.

273

Meanwhile, on October 2, Allstate had mailed to Campbell a cancellation notice notifying him that the policy was to be cancelled effective October 19. Both parties agree that under the wording of the policy proof of mailing alone was sufficient without proof of receipt to effect cancellation and hence Campbell's denial of receipt is of no moment. The $38.50 sent by Campbell, was accepted by Allstate in the sense that it was endorsed and cashed by them on December 1. Allstate also sent a second cancellation notice, which Campbell says he did receive, dated January 20, 1959, cancelling the policy as of February 1, 1959. Allstate attempted at that time to refund the $38.50 but Campbell never cashed the check.

Extension of the policy was to take effect "upon payment of the premium indicated." The premium indicated was $38.50 and such was indeed paid and accepted.

The Insurance Extension Certificate does not use words to the effect that until payment is made the policy will lapse, but says, and we repeat, that "upon the payment of the premium indicated," "This Insurance Extension Certificate extends your policy for the period shown above," which is—"September 21, 1958 to September 21, 1959." By contrast, in Soucie v. Illinois Agricultural Mut. Ins. Co., 323 Ill App 456, 56 NE2d 55, the policy provided that reinstatement of a defaulted policy by payment of a past due premium "shall not render the company liable for any loss or damage occurring," during the interim. There was no such language in this policy or in the Extension Certificate. On the contrary the Certificate says that, "upon payment of the premium indicated" the policy will be extended to September 21, 1959. We conclude that the payment, at the instruction of Allstate's agent, though subsequent to the accident, is the very pay-

274

ment called for in the Extension Certificate and therefore the period of insurance coverage was in fact extended from September 21, 1958 to September 21, 1959. In Beddow v. Hicks, 303 Ill App 247, 25 NE2d 93, it was stated:

> "An insurance company that knowingly takes a premium for a policy under conditions that would render it invalid, will not be permitted to say that it is not a binding contract for that reason. In all such cases the company will be regarded as having the same knowledge of the conditions and situation of the property as is possessed by the agent transacting the business for it."

Pertinent, too, is the fact that Campbell applied for two years coverage. He was thus justified in believing that he was fully insured for two years. There is no reason to believe that he did not intend to extend the policy. The fact that payment was made after the accident does not in and of itself raise an inference that he intended it to lapse. Furthermore, the cancellation notice dated January 20, 1959 is an admission of sorts by Allstate that his policy was in force up to that time. In Middleton v. North American Protective Ass'n, 260 Ill App 288, in a like situation, it was said:

> "The giving of that notice was an admission by appellee that there was a certificate which had been in force up to that time."

Conflicts in testimony presenting questions of fact are to be resolved by triers of the fact, in this case, the trial judge. He saw and heard the witnesses and apparently believed Campbell. Campbell and the Allstate agent are not before us and we are not triers of the fact. It is hardly necessary to iterate the appellate rule that the credibility to be accorded the testimony

of witnesses rests solely with the trial court and not with us. That the trial judge accepted one narrative over another was not only his right, but his duty, and it is likewise our duty not to disturb such choice.

■ Allstate raises many and varied points, one being that the trial court abused its discretion in not reopening the case so that it could make proof apropos of its procedure when checks are received by mail. This is a matter as to which a large discretion is accorded to trial courts and in this instance we find no abuse. It would serve no purpose for us to discuss at length various other points raised by Allstate in view of our conclusion that the policy of insurance was in force on the date of the accident. This is not to say that we have not given careful consideration to each and every point raised. But our conclusion that the policy was in force supersedes all other issues and the various reasons advanced in favor of a contrary view pale before that fact. Accordingly the judgment below is affirmed.

Affirmed.

DOVE, P. J. and McNEAL, J., concur.