Melvin Van Hulle and Louis R. Golembeck, Plaintiffs-Appellants, v. State Farm Mutual Automobile Insurance Company, a Corporation, Allstate Insurance Company, a Corporation, and Joseph Lax, Administrator of the Estate of Barbara Lax, Deceased, Defendants-Appellees.

Gen. No. 68–5.

Third District.

September 18, 1968.

Rehearing denied November 19, 1968.

Eagle & Eagle, of Rock Island, and T. E. Anderson, of Moline, for appellants.

Carl H. Wilson, Bozeman, Neighbour, Patton & Henss, of Moline, and Dale Ferguson, of Rock Island, for appellees.

ALLOY, P. J.

This action originated as a declaratory judgment action to determine whether the insurance policy which Joseph Lax had in State Farm Mutual Automobile Insurance Company was in force on January 22, 1965, when his wife, Barbara Lax, was involved in an automobile accident which caused her death.

Mrs. Lax was driving a 1959 Oldsmobile when she attempted to pass another automobile and collided with the plaintiffs head-on. As a result, Mrs. Lax was killed and plaintiffs were both injured. Joseph Lax had been insured with State Farm Mutual Automobile Insurance Company for many years. His record of payment of premiums, however, was somewhat erratic. The premium on the particular policy involved in the cause before us was due on November 21, 1964. The premium notice and a check signed by Mrs. Lax dated January 13, 1965 (nine days prior to the accident) was found in the wreckage of the automobile. Mr. Lax, upon seeing the envelope with the check payable to State Farm, asked two of his friends to take the check and notice to the State Farm agent in Moline, a George Schermerhorn. These friends did so and first talked with Mr. Schermerhorn's secretary and she refused to accept the check. They then talked to Mr. Schermerhorn, the State Farm Mutual Automobile Insurance agent, and he told them that he knew of the accident and could not accept the check. He then told them that they could mail the check directly to the State Farm home office in Bloomington and let such company decide if they would accept the check. The check was mailed the day of the accident, January 22, 1965, along with the premium notice but with no other letter of explanation.

The day after the accident, on January 23, the State Farm Automobile Insurance Company agent, Mr. Schermerhorn, called the home office of State Farm in Bloomington and explained the situation and told the home of-

fice representatives that they would be receiving a check for the premium. Schermerhorn indicated that he had not directly or indirectly given any indication that Mr. Lax had coverage under his policy and, in fact, told Mr. Lax that he doubted if he had coverage. There was evidence of a conversation between Mr. Schermerhorn and Mr. Lax where Mr. Lax stated that he wanted his check or money back if State Farm would not accept coverage as the Oldsmobile was demolished and he didn't need any future coverage. He stated that he told Mr. Schermerhorn that if State Farm didn't accept his claim they should not cash his check. This was confirmed in a letter which Mr. Schermerhorn wrote to State Farm home office on February 11 in which he again reviewed the chain of events and concluded with the following paragraph:

> "Since the car to be reinstated on this policy has been demolished beyond repair, if there is to be no coverage, then Insured's $48.30 remittance should be returned to him with a letter of explanation that there will be no coverage & why. I feel a letter from the Company in this case would be advisable. Please give me your thoughts on this & advise me if you desire further information.
>
> /s/ Geo. Schermerhorn"

About February 15, 1965, State Farm cashed the check which Mrs. Lax had made out before her death and that check cleared the Lax account on February 17, 1965. On February 18, State Farm mailed Mr. Lax a refund check which was dated February 15, 1965, for $48.30, being the same amount as the check signed by Mrs. Lax. This letter explained that the Lax policy could not be reinstated to cover the accident. Lax refused to cash such refund check.

The two occupants of the automobile which was struck by the car being driven by Mrs. Lax brought the de-

380

claratory judgment action seeking to have the State Farm policy declared to be in force with liability limits of $30,000 per person and $60,000 per accident. Without this policy they would be limited to a total of $10,000 of uninsured motorist's coverage. The trial judge found that the State Farm policy was not in force at the time of the accident. Joseph Lax has also appealed in this cause contending that the State Farm policy was in force and he sought $5,000 in death benefits under the State Farm policy.

It was disclosed in the record that State Farm sent a premium notice to Lax 30 days prior to November 21, 1964, and another notice was sent to him three days after November 21, 1964, informing him that if he paid the premium within 10 days of when it was due he would have continuous coverage. 23 days after November 21, 1964, State Farm sent a notice to Lax advising that his insurance had expired since the premium was not received, and "you may reinstate your insurance for six months by sending us a remittance for the amount due. Please return this form with your payment." There was also evidence in the record presented by State Farm as to how late premium payments were handled. It was shown that if they came within 10 days, there was no lapse in coverage. If the premium payments came in after 10 and before 23 days, the policy went in force on the date payment was received and a refund was made to the policyholder for the days during which he had no coverage. If payment came in after 23 days, but before 39 days, a new policy was issued with the coverage beginning the day the premium was received. If a premium was received after 39 days, a new application had to be completed.

Payment record of Joseph Lax to State Farm over the past years showed that Lax nearly always paid late. In 1962 he paid 44 days late and a new application was taken and his new policy did not begin until 44 days

after the premium was due on the former policy. In 1963, Lax was 12 days late and refund was made to him for the 12 days in which he did not have coverage because he failed to pay within the 10 days after the premium was due. When his policy became due on April 13, 1964, he failed to pay until May 21, 1964 (38 days late), a new policy was written beginning May 21, 1964, so that Mr. Lax was advised that he did not have coverage between April 13, 1964, and May 21, 1964. In the instant case the premium which was in dispute was due November 21, 1964, and was not paid prior to the accident on January 22, 1965, which was a total of 62 days after the due date. As we have indicated, the trial judge concluded that the State Farm policy was not in force at the time of the accident on January 22, 1965.

We are confronted with an unusual case in many respects. No exact precedent has been directed to our attention nor have we been able to discover one which deals with the situation involving a tender of a premium to a company for the purpose of affording coverage where such insurance company has knowledge of the accident and loss and where the tender is made for the purpose of obtaining coverage for such loss. The closest precedent seems to be the case of Perry v. Campbell, 45 Ill App2d 271, 195 NE2d 844.

In Perry v. Campbell, supra, an auto insurance premium was due September 21, 1958, and on November 16, 1958, the insured had an accident. The premium was paid to the company on November 22, 1958, and the company, with knowledge by its local agent only of the accident, cashed the check, but later attempted a refund in cancellation of the policy. The insured in that case called his agent on November 21, 1958, and told him of the accident and that he hadn't paid the premium. The insured testified that the agent said, "Send the premium in and we'll take care of your accident." The court in the Perry v. Campbell case specifically stated that the pay-

ment, at the instruction of Allstate's agent, though subsequent to the accident, is the very payment called for in the extension certificate in that form of policy (annual extensions) and, therefore, the period of insurance coverage was in fact extended from September 21, 1958, to September 21, 1959. While there was no evidence of a provision for lapse of coverage during the period of default, the court in Perry v. Campbell, supra, apparently relied solely upon the acceptance of the late premium by the insurer coupled with knowledge only of the local agent of the company.

It is apparent that if the premium in the instant case had simply been sent into the company and cashed by the company without knowledge of the accident, there would be no coverage under the policy. Forfeiture of an insurance policy for nonpayment of premium, however, may be waived after a loss by acceptance of the past-due premium with the notice of the loss, particularly if the premium is tendered with the understanding that acceptance thereof would operate as a continuation of coverage during the period when the accident occurred (Perry v. Campbell, 45 Ill App2d 271, 275, 195 NE2d 844).

We particularly note that the check which was written for the premium was discovered among the personal effects in the automobile on the day of the collision and was taken immediately by friends of Joseph Lax to the State Farm local agent. Both the agent and the secretary knew of the collision and refused to accept the check but at the agent's suggestion it was mailed to the home office of State Farm. The following day Joseph Lax came in and reported the collision to the agent and, also, on that day the agent called the State Farm claim office and advised the claim adjuster of the accident and of the tender of the check. Joseph Lax in a further conversation with the local agent of State Farm, stated that he felt that State Farm should afford coverage because he had carried all of his insurance with State Farm for

over 15 years, and that if State Farm was not going to afford coverage, Lax wanted his money back because the Oldsmobile had been demolished. The local agent followed the matter up with a written memorandum to State Farm on February 11, detailing facts of the collision and the tender of the check as well as Joseph Lax' request that State Farm afford coverage. The local agent concluded the written memorandum by advising the home office, as we have indicated in this opinion, that since the car had been demolished beyond repair, reinstatement would be futile, and if there was to be no coverage, then the remittance of $48.30 should be returned to Lax with a letter of explanation. Instead of returning the remittance with a letter of explanation, State Farm cashed the check after apparently holding the check for approximately three weeks. On the record, this was done with full knowledge of the collision and of the fact that the check had been tendered for the express purpose of obtaining coverage with respect to the collision. We are also impressed by the fact that the local agent had advised the State Farm home office that he had stated that he thought there would be no coverage, but that it would be up to State Farm to determine whether coverage should be afforded, in view of the fact that Joseph Lax and members of his family had insurance with State Farm for a number of years.

The procedural arrangements which ordinarily would be made with reference to the late payment of a premium obviously would not be applicable to a situation such as we have before us where there had been an accident and the subject matter of the policy, the Oldsmobile, had been demolished, where there was full knowledge of the accident by State Farm and its agent, and where the premium was tendered for the express purpose of securing coverage for the collision. With full knowledge of the accident and the purpose of the tender, State Farm cashed the check. It can hardly be contended that ac-

ceptance of the premium was to afford future coverage, since State Farm had been advised that the Oldsmobile had been destroyed, and there was nothing left to insure. It is analogous to acceptance of a past-due premium on a life insurance policy which obviously would not afford future coverage when the subject matter of the policy, the insured, has died.

■ Both parties to the litigation emphasize the social consequences of a decision for or against the insured and the insurance company. We are also conscious of the fact that the courts of this State have always adopted a uniformly liberal construction in favor of affording coverage under an insurance policy wherever the facts justify such coverage. Under the facts in the record, it is apparent that the check was tendered conditionally and for the purpose of affording coverage for the accident. We, therefore, see no justifiable distinction in principle in this case from the case of Perry v. Campbell, supra.

■ On the basis of the record in this cause, it is apparent that State Farm accepted the past-due premium with full knowledge of an intervening loss and ostensibly for the purpose of providing coverage therefor. We must, therefore, conclude that there was coverage under the terms of the policy by virtue of the acceptance of the premium with knowledge of the purpose of tender.

The judgment of the Circuit Court of Rock Island County will, therefore, be reversed and this cause is remanded to such court with directions to vacate such previous judgment and enter judgment in this cause in favor of the Plaintiffs-Appellants and Appellee Joseph Lax in accordance with the views expressed in this opinion.

Reversed and remanded with directions.

STOUDER and CULBERTSON, JJ., concur.