(No. 41850.—

MELVIN VAN HULLE *et al.*, Appellee, *vs.* STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant.

*·Opinion filed Nov. 26, 1969.—Rehearing denied Jan. 28, 1970.*

UNDERWOOD, C.J., and CULBERTSON, J., took no part.

FERGUSON AND FERGUSON, of Rock Island, (DALE FERGUSON and SIDNEY Z. KARASIK, of counsel,) for appellant.

EAGLE & EAGLE, of Rock Island, and THEODORE E. ANDERSON, of Moline, for appellees.

Mr. JUSTICE KLUCZYNSKI delivered the opinion of the court:

On the morning of January 22, 1965, while attempting to pass a truck, Barbara Lax was killed when her automobile struck another driven by Louis Golembeck. A declaratory judgment action in the circuit court of Rock Island County, to have a liability insurance policy which was issued in the name of deceased's husband, Joseph, declared in force at the time of the accident, was instituted by Louis Golembeck and his passenger, Melvin Van Hulle. The trial court found that the State Farm insurance policy was not in force at the time of the accident, and plaintiffs appealed. Joseph Lax joined in the appeal because he sought a $5,000 death benefit payable to him if the policy was in force. The Appellate Court, Third District, reversed (99 Ill. App. 2d 378) and we granted leave to appeal.

The issue is whether certain conduct on the part of an insurer and its agents waives the lapse of an insurance policy. The determination of the question of whether there was a waiver lies in an interpretation of a series of events commencing on May 21, 1964. On that date State Farm Mutual Insurance Company issued an automobile insurance policy to Joseph Lax. Six months later the policy lapsed for non-payment of premium. Thereafter an expiration notice was sent to Lax, and finally because no premium had been

received a lapse notice was sent on December 16. The lapse notice informed Lax that the policy had lapsed, but that it would be reinstated upon payment of the premium. No action was taken on the policy until January 13, 1965 when Mrs. Lax made out a check payable to State Farm in the amount of the premium due. The check with the lapse notice was deposited in an envelope addressed to State Farm, and was found on the day of the accident in the wreckage of the Lax automobile. After finding the envelope, Lax asked two of his friends to take the check and notice to the State Farm agent in Moline. His friends did so and spoke to George Schermerhorn, the State Farm agent, informing him of the accident. He told them that he knew of the accident and could not accept the check. But he advised that they could mail it directly to the State Farm office in Bloomington and have the company decide if they would accept the check. Later that day the check was mailed, along with the lapse notice, but without any explanation. The next day Schermerhorn called the claim office and advised the claim officer of the accident and the tendering of the check. Seven days later (1-29-65) there was a conversation between Lax and Schermerhorn in which Lax told the agent that if the claim was not to be covered, he wanted his check (or money) returned because there was no longer any need for coverage on his demolished automobile. On February 11, Schermerhorn wrote the following memorandum to the State Farm office:

"To Harley Kiper—Und. Supt. Date 2-11-65
Policy No. 1506821-E21-13A
Policyholder Lax, Joseph F.
Subject Coverage for claim.
Al, this policy lapsed 11/21/64 for nonpayment of prem. On 1/22/65, insured's wife, Barbara, involved in head on collision near Coal Valley with a U.S. Govt. vehicle containing an Army Sgt. and civilian employee from R.I. Arsenal. Barbara was alone in car and was killed almost instantly when she passed truck and collided with other car.

Insured's friend brought in check that same afternoon, which was dated 1/13/65 & signed by Barbara and made out to State Farm, which I stated I couldn't accept since accident had already occurred. Apparently, Barbara had neglected to mail check to State Farm. Check was then mailed to H.O. by insured or his friend on that date & is shown received on 1/26/65 by form G 51 & 1.3 (attached).

I have told insured there was no coverage and am quite sure I am on 'solid ground' here. However, he has asked me to check further since he has had State Farm for years & members of his family have also & feels we should afford some protection on this loss. He also has Pol. No. 1530165-D16-13A presently in force on another vehicle.

Since the car to be reinstated on this policy has been demolished beyond repair, if there is to be no coverage, then insured's $48.30 remittance should be returned to him with a letter of explanation that there will be no coverage & why. I feel a letter from the company in this case would be advisable. Please give me your thoughts on this & advise me if you desire further information.

Geo. Schermerhorn"

About February 15, 1965, State Farm deposited Mrs. Lax's check, and two days later it cleared her bank in Orion, Illinois. On February 18, State Farm mailed Lax a refund check and a letter explaining that the policy could not be reinstated. Lax did not cash this refund check.

In many jurisdictions waiver of a forfeiture has been upheld under certain circumstances where the insurer, with knowledge of an intervening loss, accepts a premium tendered for the purpose of covering the loss. (*Alabama Farm Bureau* v. *Hicks,* 272 Ala. 574, 133 So. 2d 221; *M. F. A. Mutual Ins. Co.* v. *Quinn* (Mo.), 259 S.W.2d 854; *Seavey* v. *Erickson,* 244 Minn. 232, 69 N.W.2d 889; *Johnston* v. *Phelps County Mutual Ins. Co.,* 63 Neb. 21, 88 N.W. 142; *Continental Ins. Co.* v. *Chew,* 11 Ind. App. 330, 38 N.E. 417; *Joliffe* v. *Madison Mut. Ins. Co.,* 39 Wis. 111, 20 A.R. 35; *American Nat. Ins. Co.* v. *Cooper* (Colo. 1969), 458 P.2d 257. Generally the waiver is not expressed or intentional, but rather it is implied from the conduct of the insurer or its agents. State Farm contends that the circumstances of the case do not imply waiver.

To imply the waiver of lapse the insurer must have knowledge of the intervening loss. It is a well established rule of agency that "* * * the liability of a principal is affected by the knowledge of an agent concerning a matter as to which he acts within his power to bind the principal or upon which it is his duty to give information." (Restatement of the Law, Agency, § 272.) From the record there is no dispute that the agent had immediate notice of the loss, but State Farm argues that there was no duty to communicate this notice to the principal because the transaction involved a policy lapsed for 62 days.

Joseph Lax carried all his insurance with State Farm for over ten years and had dealt with George Schermerhorn for years. Payment record of Joseph Lax to State Farm over the years indicates that insured was late on numerous occasions. Dealing directly with the State Farm agent on a lapsed policy was insured's usual course of business. In contacting the agent on the day of the accident, it seems that Lax expected to get protection from State Farm because of his long association with the company. Apparently, he felt that because his wife wrote the check before the accident, this indicated a prior intent on their part to renew the policy. There is no dispute that approximately one week after the accident Lax gave Schermerhorn a notice that if there would be no coverage he wanted his check (or money) back. This communication was verified in a memorandum from Schermerhorn to State Farm dated February 11, 1965. These facts do not present a situation where a complete stranger was making a frivolous attempt to get coverage from an insurance company. Rather we find an insured of several years trying in good faith to ascertain whether coverage was possible. Under these circumstances it is apparent to us that by January 29, 1965, the agent had notice of the loss and of the conditional tendering of the check and a duty to convey such notice to the principal.

Next, State Farm argues that there was no acceptance

of the premium, even though the premium check was cashed. However, some of the aforementioned cases hold that the cashing of a check is significant and indicates acceptance. In *Perry* v. *Campbell*, 45 Ill. App. 2d 271, also an insurance case involving retroactive coverage, the appellate court found that a premium check was accepted when cashed, even though the amount of the premium was refunded. We agree that at some point in the receiving, holding and disposing of a check, there must be an acceptance of it. The Lax check was received on January 26 and cleared the drawee bank 22 days later. Considering the elapse of 22 days and the eventual cashing of the check, we find these sufficient for acceptance, regardless of the fact that the insurer attempted to refund the premium.

Finally, to constitute waiver an intent to get retroactive coverage must be communicated to the insurer. As previously stated, it is apparent to us that on January 29, 1965, the State Farm agent had notice of the conditional tendering of the check.

We next consider the propriety of applying a rule of waiver under the circumstances of this case. In *Simmon* v. *Iowa Mutual Casualty Co.* (1954), 3 Ill.2d 318, 322, this court discussed the social implications of insurance contracts: "Automobile insurance has taken an important position in the modern world. It is no longer a private contract merely between two parties. The greater part of litigation in our trial courts is concerned with claims arising out of property damage, personal injury or death caused by operation of motor vehicles. * * * Government and the general public have an understandable interest in the problem. Many persons injured and disabled from automobile accidents would become public charges were it not for financial assistance received from the insurance companies." Forfeiture of an insurance contract for nonpayment of premium is not favored in the law, and courts are prompt to seize upon circumstances which indicate a waiver of forfeiture (*M.F.A.*

*Mutual Ins. Co.* v. *Quinn*, 259 S.W.2d 854.) We are aware of the importance of insurance protection to the well-being of the citizens of this State, and are of the opinion that where proper notice has been given and justice between the parties allows, contracts of insurance will be deemed in force.

State Farm argues that if waiver is upheld, this court will be outlining a formula for fraud on insurance companies. However, we believe that this problem can be easily overcome by an adjustment in the procedure for handling lapsed policies.

*Judgment affirmed.*

Mr. Chief Justice Underwood and Mr. Justice Culbertson took no part in the consideration or decision of this case.