ORLIN G. KRUMWIEDE, Plaintiff-Appellant, v. BANKERS LIFE & CASUALTY COMPANY, Defendant-Appellee.

Third District    No. 80-387

Opinion filed April 29, 1981.

Ronald E. Boyer, of Watseka, for appellant.

Frank J. Simutis, of Ackman, Marek, Boyd, Simutis & Bigott, Ltd., of Watseka, for appellee.

Mr. JUSTICE ALLOY delivered the opinion of the court:

The plaintiff, Orlin Krumwiede, appeals from a judgment of the Circuit Court of Iroquois County, denying him recovery under two policies of health insurance.

In August of 1976, the plaintiff purchased three surgical and hospitalization policies from the defendant insurer. Policy #760,013,232, issued to Mr. Krumwiede, covered both him and his wife. A second policy, bearing the same number, supplemented the hospitalization coverage. A

third policy, #760,013,231, issued in the name of Mrs. Krumwiede, provided coverage only to her. A premium of $255 was paid for quarterly coverage on Mr. Krumwiede's two policies, commencing October 27, 1976. In November, payment was made to continue the policies for the quarter from January 27 to April 27, 1977. Mrs. Krumwiede's separate policy was fully paid through June 27, 1977.

Mr. Krumwiede became dissatisfied because the company had failed to pay for a claim submitted by Mrs. Krumwiede. He, therefore, mailed no premium payment to extend the coverage past April 27, 1977. However, the policies provided for a 31-day grace period. Therefore, coverage under the policies was automatically extended through May 28, 1977.

During April or May, the defendant insurance company mailed two undated letters to the plaintiff, urging him to renew his policies. These letters requested the plaintiff to mail an enclosed "reinstatement form" and one month's premium. "One month's premium will put your policy back in force the day we accept the application." The "reinstatement form" referred to was a form letter prepared by and addressed to the insurer. It stated, *inter alia*, "This insurance is to be reinstated effective on the day you approve this request." This form required no information from the insured, other than his signature and the date. The plaintiff signed the form and dated it July 8, 1977. He also prepared a check, dated July 8, payable to the insurer for the amount of $85.12. The plaintiff testified that he mailed the form and check on July 8. The insurer claims to have received the mailing on July 18. The latter date is stamped on the form, and an employee of the insurer testified that all mail is stamped the day it is received by the company. The form referred only to policy #760,013,232. The monthly premium indicated on the form was $70.30. Mr. Krumwiede testified that he sent in more than that amount because he also wished to effect payment on the policy owned by his wife, which bore a monthly premium of $14.82.

On July 22, 1977, the plaintiff was ordered hospitalized by his physician. During this hospitalization, a kidney was surgically removed from the plaintiff. There is no dispute that the illness was sudden and unexpected. On July 23, Mrs. Krumwiede telephoned the agent who sold her husband the insurance policies, and notified him of the illness. On July 25, she notified the company headquarters by telephone. Subsequently, she filed a claim form.

In a letter dated August 15, 1977, the defendant insurer wrote to the plaintiff's wife, informing her that "we can't reinstate Mr. Krumwiede's part of policy #760,013,232 right now. We can consider re-adding him to the policy and reinstating his insurance when he's out of the hospital and completely recovered from his current disorder." The letter goes on to state that the company will reinstate Mrs. Krumwiede's own policy,

#760,013,231, which lapsed on June 27, granting her coverage until October 27, if she should send in a quarterly premium of $57.26, an amount equal to $14.82 more than her initial quarterly premium on this policy. $14.82 represents one month's premium for Mrs. Krumwiede's separate policy. It is, therefore, clear that the company, in offering to reinstate Mrs. Krumwiede's separate policy, required a one-month premium payment to cover the 31-day grace period (June 27 to July 28), plus a regular quarterly payment of $42.44 to continue her policy to October 27, 1977. In addition, the letter offered to reinstate Mrs. Krumwiede under her husband's policies, #760,013,232, on condition that certain medical conditions be excluded from her coverage. The letter requests, "Please send us $82.48. This, with the money we're holding, will reinstate your insurance and pay one month in advance." The letter further asks that she fill out a form and mail it to the company within 10 days. "We'll send back a copy to you with the reinstatement forms." The form which she was to send back to the company stated the monthly premium to be $83.80.

The defendant insurer cashed Mr. Krumwiede's check of July 8 for $85.12 on August 17, 1977, and deposited that amount in a "suspense account." The check bears an endorsement of the drawee bank dated September 19, 1977, although no testimony was elicited as to that fact. The insurer prepared and mailed a check to Mr. Krumwiede in the amount of $85.12 on September 26, 1977. Mr. Krumwiede did not cash this check.

Mr. Krumwiede's hospitalization cost him some $9,000. The parties agree that, if covered by the instant policies of insurance for this hospitalization, the amount of coverage would be some amount between $5,171.70 and $5,801.70.

The cause was tried by jury on the question of whether the defendant insurer had "accepted" Mr. Krumwiede as a paid-up, reinstated policyholder prior to July 22, 1977. The jury found for the defendant and against the plaintiff, and judgment was entered accordingly.

The plaintiff contends on appeal that the defendant insurer waived lapse of the policy when it cashed Mr. Krumwiede's check with knowledge of the intervening loss.

The jury's verdict indicated that there was no acceptance of the check by the insurer prior to the plaintiff's hospitalization on July 22. However, our supreme court has held that in some cases, "the cashing of a check is significant and indicates acceptance." "At some point in the receiving, holding, and disposing of a check, there must be an acceptance of it." (*Van Hulle v. State Farm Mutual Automobile Insurance Co.* (1969), 44 Ill. 2d 227, 232, 254 N.E.2d 457.) In the *Van Hulle* case, the plaintiff submitted a check to cover the premium on a lapsed automobile insurance policy after the occurrence of a fatal accident. The insured

communicated to the company's agent that he wished the payment to be applied retroactively or refunded, as the automobile to be insured had been totally destroyed. The supreme court in *Van Hulle* stated, "The check was received on January 26 and cleared the drawee bank 22 days later. Considering the elapse of 22 days and the eventual cashing of the check, we find these sufficient for acceptance regardless of the fact that the insurer attempted to refund the premium." (44 Ill. 2d 227, 232, 254 N.E.2d 457.) In the instant case, the plaintiff's check was held by the defendant insurer for 30 days before being submitted to the insurer's bank. A provisional credit was then provided the insurer. The insurer continued to hold the funds for 40 additional days, including 7 days subsequent to the date on which it had a right to the funds without set-off, *i.e.*, September 19 (see Ill. Rev. Stat. 1977, ch. 26, par. 4—213(2), (3)): It then, on September 26, prepared a refund check and mailed it to Mr. Krumwiede.

The defendant claims that it had sound business reasons for handling the payment in such a manner. It argued at trial that the check was cashed as a normal precaution against its loss or mutilation. Nevertheless, the check was held by the insurance company for 30 days before it was negotiated. The insurer further asserted at trial that it cashed the check because the check represented payment not only for Mr. Krumwiede's lapsed policies, but also for Mrs. Krumwiede's separate policy. However, on the date the check was cashed, Mrs. Krumwiede's policy had, by its terms, already lapsed. In its August 15 letter, the company offered to reinstate her, retroactively, only if she were to pay a premium of $14.82 for the June 27 to July 28 grace period in addition to a quarterly premium of $42.44 to effect coverage from July 27 (already past) to October 27. It is, therefore, clear that Mrs. Krumwiede owed nothing on her policy and that neither Mr. nor Mrs. Krumwiede had outstanding debts owing to the insurer. The return of the entire $85.12 on September 26 confirms that fact. Under these circumstances, the decision of our supreme court in *Van Hulle v. State Farm Mutual Automobile Insurance Co.* requires that this court find, as a matter of law, that the defendant-insurer accepted the plaintiff's check of July 8 for the amount of $85.12.

The defendant argued at trial that acceptance of payment, in itself, did not bind it to cover the expenses of Mr. Krumwiede's illness. To bind the company, such acceptance would normally have to occur prior to the date of the insured's hospitalization, if so provided, as here, in the contract of insurance. However, the case of *Van Hulle v. State Farm Mutual Automobile Insurance Co.* also established that, under certain circumstances, where the insured, with knowledge of an intervening loss, accepts a premium tendered for the purpose of covering the loss, the forfeiture of insurance is waived. To imply the waiver of lapse the insurer must have

knowledge of the intervening loss. (44 Ill. 2d 227, 231, 254 N.E.2d 457.) There is no question that, in the instant case, the insurer had knowledge of Mr. Krumwiede's hospitalization prior to cashing the check.

We see no significant feature of this case which requires us to distinguish it from *Van Hulle*. In *Van Hulle*, it is stated, "[T]o constitute waiver an intent to get retroactive coverage must be communicated to the insurer." Obviously, no attempt was made to obtain coverage retroactive to any date prior to July 18, as no loss had occurred prior to that date. However, the oral notification of the insurer's sales agent on July 23 and of the insurer's home office on July 25, followed by the submission of a claim form, clearly indicated an intent to apply plaintiff's July premium payment (received July 18) to coverage for his July 22 hospitalization. Furthermore, the insurer evinced no intention of applying the premiums to prospective coverage of either Mr. or Mrs. Krumwiede without further action by the Krumwiedes and further decision by the company. In the letter of August 15, the insurer offered to reinstate Mrs. Krumwiede's separate policy only on condition that she pay premiums retroactively for the period commencing June 27, during which she had no claims. The company asked for the full premium, indicating no intent to apply any of the $85.12 to her separate policy. Nor was any of the $85.12 automatically applied by the company to prospectively insure either Mr. or Mrs. Krumwiede under Mr. Krumwiede's policies. The letter of August 15 indicates only that the company would "consider * * * reinstating [Mr. Krumwiede's] insurance when he's out of the hospital and completely recovered * * *." Mrs. Krumwiede was granted no prospective coverage without further action on her part and, apparently, on the part of the company as well. She was offered coverage under her husband's policies on condition that she send in more money and that she mail in a waiver of coverage for certain medical conditions. Even doing those acts would not guarantee her coverage, but would merely cause the company to "send back * * * the reinstatement forms." Yet, on August 17, two days after sending this set of proposals, and before receiving or even being able to receive the requested response thereto, the company cashed the plaintiff's July 8 check. The refunding of the full amount of the check on September 26 indicates that no part of it was applied to prospective coverage.

Under these circumstances, the insurer's cashing of the plaintiff's check places this cause well within the rule of *Van Hulle*. Where, as here, the defendant neither applied the check to prospective coverage nor refunded it until 40 days after cashing it, we see no just reason for distinguishing this cause from *Van Hulle* on the ground that in *Van Hulle* the insurer cashed the check and three days later (a day after the check cleared) mailed the insured a refund check and a letter explaining that the policy would not be reinstated, whereas in the instant cause, the insurer

first mailed notice to the insured's wife of its decision to deny her husband coverage, and two days later cashed his premium check.

We find that this cause is governed by *Van Hulle v. State Farm Mutual Automobile Insurance Co.* and that the defendant insurer, on the record, waived forfeiture of plaintiff's policies for surgical and hospitalization insurance.

We, therefore, reverse the judgment and remand this cause to the Circuit Court of Iroquois County for trial on the sole issue of the amount of money owed the plaintiff by the defendant under the relevant policies of insurance.

Reversed and remanded.

STOUDER and BARRY, JJ., concur.