GLEN BOWERS *et al.*, Plaintiffs-Appellants, v. ALLSTATE INSURANCE COMPANY *et al.*, Defendants-Appellees.

Third District   No. 3—89—0197

Opinion filed December 29, 1989.

Chester C. Fuller, of Peoria, for appellants.

Robert Jennetten, of Quinn, Johnston, Henderson & Pretorius, of Peoria (John J. Waldman, of counsel), for appellees Allstate Insurance Company and Allstate Indemnity Insurance Company.

JUSTICE SCOTT delivered the opinion of the court:

Plaintiffs appeal from a judgment entered on February 28, 1989, wherein the circuit court granted defendants, Allstate Insurance Company and Allstate Indemnity Insurance Company's (both referred to hereafter as Allstate unless otherwise indicated), motion for summary judgment. The procedural issue on appeal is whether the circuit court erred in granting Allstate's motion. The substantive issue is

whether plaintiffs were covered by an insurance policy issued by All-state on November 8, 1985.

Plaintiff Glenn Bowers submitted an application for an automobile insurance policy on August 18, 1985, through a local Allstate agent. At that time, Mr. Bowers was given an estimated premium quote of $239 covering a six-month period, and Bowers paid $60 at that time to bind the insurance. There is no evidence in the record as to what type of payment plan Mr. Bowers was to be placed on. Mr. Bowers' application for insurance listed only one traffic violation, but a subsequent check by Allstate with the Secretary of State revealed that he, in fact, had three traffic violations. Allstate, therefore, appears to have unilaterally placed Mr. Bowers in the high risk category, and a policy was issued to Mr. Bowers by Allstate Indemnity Insurance Company rather than Allstate Insurance Company at a substantially higher premium rate than the rate quoted to Mr. Bowers by the local Allstate insurance agent. Allstate then sent to Mr. Bowers an insurance declaration page indicating a policy period of August 18, 1985, through February 18, 1986, and a premium rate of $465.70 No insurance policy, however, accompanied the declaration page sent to Mr. Bowers at this time nor did Mr. Bowers receive any explanation as to why the premium rate was approximately double the estimated rate quoted him by the local Allstate agent.

Mr. Bowers made no additional payments to Allstate, and a notice of cancellation was eventually sent by Allstate to Mr. Bowers indicating that a balance of $176.85 was due and that the policy would be cancelled effective October 14, 1985, unless the past-due amount was paid on or before that date. On October 20, 1985, Allstate received a payment of $74.85 from Mr. Bowers, and Allstate then apparently reinstated Mr. Bowers' policy effective October 20, 1985, and a *per diem* credit was given Mr. Bowers for the six-day period the policy was not in effect. The record is void, however, of any notice being sent to Mr. Bowers explaining that his policy was cancelled and subsequently reinstated with a credit given for the noncovered period from October 14 to October 20, 1985. On October 25, 1985, Allstate sent another notice of cancellation to Mr. Bowers indicating that unless payment of $99.40 was received by November 7, 1985, his policy would be cancelled as of that date. No payment was received by the time specified in the notice, and Allstate cancelled the policy on November 7, 1985. On November 8, 1985, Mrs. Bowers was involved in an accident. On that same day, Mr. Bowers tendered a check to Allstate in the amount of $75 which was received by Allstate on November 14, 1985. Allstate again accepted this payment

and reinstated the policy effective November 12, 1985, giving Mr. Bowers a *per diem* credit of $12.50 for the time the policy was out of force. Allstate subsequently sent Mr. Bowers a notice advising him of the policy lapse and credit given.

Mr. Bowers advised Allstate of the accident on November 9, 1985, by calling Allstate's toll-free number and at that time was advised to take his car to Allstate's claim office to have it appraised for damages. Although Mr. Bowers asked, Allstate could not inform Mr. Bowers whether coverage was available for his car.

Plaintiffs later made a demand to Allstate that it defend Mrs. Bowers in any lawsuit arising out of the accident on November 8, 1985, and pay for any damages. Allstate refused, and plaintiffs brought this suit for declaratory judgment.

■ The Illinois Code of Civil Procedure, section 2—1005, states that a motion for summary judgment "shall be rendered without delay if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(c).) Plaintiffs' primary argument in this case is that Allstate waived its right to cancel the policy by accepting late payments after the cancellation date. Allstate, on the other hand, argues that timely notice was sent to Mr. Bowers informing him that unless payment was made his policy would be cancelled. Mr. Bowers, therefore, cannot now be heard to say that coverage should be provided when his lack of timely payments was the reason for the policy cancellation. We find Allstate's position troubling for three reasons. First, although Allstate claims that the policy issued to Mr. Bowers clearly states that Allstate reserved the right to cancel the policy for failure to pay the premiums when due, the evidence is unclear as to when Mr. Bowers received the policy. It seems apparent the policy was not sent with the declaration page. Moreover, the policy itself speaks nothing of Allstate having the authority to cancel the policy, accept late payments, and then reinstate the policy from the date the late payment was received. The policy speaks only of Allstate having the right to cancel the policy for nonpayment. In fact, the cancellation notice sent to Mr. Bowers was silent regarding Allstate's practice of cancelling and reinstating policies. Second, it is also an apparently disputed fact that plaintiffs informed Allstate of the accident prior to Allstate receiving the late payment from Mr. Bowers. In this regard, there are numerous Illinois cases that consider acceptance of a premium after receiving an intervening notice of loss a determining fac-

tor of whether the insurance company has waived its right to cancel or lapse a policy. (See *Van Hulle v. State Farm Mutual Automobile Insurance Co.* (1969), 44 Ill. 2d 227, 254 N.E.2d 457; *Horace Mann Insurance Co. v. Brown* (1973), 13 Ill. App. 3d 330, 300 N.E.2d 20.) Finally, Allstate cannot meritoriously rely on the argument that Mr. Bowers previously had his policy cancelled for lack of a timely payment and then later prospectively reinstated when late payment was received since the record is void of any evidence that Mr. Bowers was informed of his policy having been out of force prior to the time period in question.

Allstate relies on the cases of *Butt v. State Farm Mutual Automobile Insurance Co.* (1982), 107 Ill. App. 3d 68, 437 N.E.2d 346, and *Gurley v. State Farm Mutual Automobile Insurance Co.* (1981), 101 Ill. App. 3d 619, 428 N.E.2d 916, for the proposition that no waiver exits in this case. The holdings in *Butt* and *Gurley,* however, are each based on the particular facts involved after the respective courts had the opportunity to consider the evidence at trial. Moreover, the notices sent to the respective insureds in each case contained unequivocal language about what would happen if a payment was made after the cancellation date or grace period. Such unequivocal language is not contained within the notices sent to Mr. Bowers by Allstate in the present case. No mention is made in the Allstate cancellation notice as to how a payment received after the cancellation date will be treated.

▇▇ ▇ In light of the general policies that forfeiture of an insurance contract for nonpayment of a premium is not favored (*Van Hulle,* 44 Ill. 2d 227, 254 N.E.2d 457), and unclear provisions in an insurance contract are to be strictly construed against the insurer (*Community State Bank v. Hartford Insurance Co.* (1989), 187 Ill. App. 3d 110, 542 N.E.2d 1317), plaintiffs ought to be afforded the opportunity to present their case as there appear to be contested facts concerning the waiver issue which do not solely involve contract interpretation. We likewise believe there is some merit to plaintiffs' theory that they are entitled to insurance on a *per diem* basis in light of certain deposition statements made by an Allstate agent that insurance coverage is determined on a *per diem* basis in situations when less than the full premium is received and accepted by Allstate. It is also indisputable that credits given by Allstate in a lapse situation are given on a *per diem* basis. Whether or not plaintiffs are entitled to coverage is, at least in part, a question of fact to be resolved at trial.

We pass no judgment as to the merits of plaintiffs' claims in this

case, but believe there are certain contested material facts requiring resolution by trial. We therefore reverse the circuit court's order of February 28, 1989, granting Allstate's motion for summary judgment and remand the cause for further proceedings.

Reversed and remanded.

BARRY and STOUDER, JJ., concur.