DEBORAH WILSON, Plaintiff-Appellee, v. THE FRANKLIN LIFE IN-
SURANCE COMPANY, Defendant-Appellant.

Fourth District   No. 4—91—0768

Opinion filed June 25, 1992.

COOK, J., specially concurring.
STEIGMANN, J., concurring in part and dissenting in part.

Lee Humphrey and Matthew J. Maddox, both of Hinshaw & Culbertson, of Springfield, for appellant.

Traub, Weeks & Brucker, Ltd., of Fairbury, for appellee.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

On August 7, 1990, plaintiff Deborah Wilson brought suit against defendant Franklin Life Insurance Company (Franklin) in the circuit court of Livingston County to recover benefits under a life insurance policy issued by defendant on the life of decedent Kenneth A. Niesmann, Jr. Wilson is the beneficiary under the policy and contends the policy was in force on the date of Niesmann's

death. Defendant maintains no benefit is owed under the policy, because the policy lapsed prior to Niesmann's death for failure to pay premiums. On September 17, 1991, following cross-motions for summary judgment, the trial court entered judgment in favor of plaintiff and against the defendant in the amount of $108,717.20 plus costs and denied defendant's motion for summary judgment. Defendant has appealed both the granting of plaintiff's motion and the denial of its motion for summary judgment. We reverse the summary judgment for plaintiff but affirm the denial of defendant's request for summary judgment. We remand for further proceedings.

The record upon which the motions for summary judgments were based consisted of the pleadings, plaintiff's response to defendant's request to admit facts, affidavits, and depositions. The parties concede the existence of certain facts as follows: (1) Niesmann applied to defendant for a life insurance policy in the amount of $58,717.20 with a $50,000 rider on May 4, 1989; (2) the policy was effective June 15, 1989; (3) the annual premium was $959.04, but the policy was sold on a salary allotment plan whereunder Niesmann authorized his employer, Technical Metals, to deduct $20 per week from his paycheck for payment of his premium; (4) under the salary allotment plan, payments were received by Franklin every two weeks; (5) under the plan, on the 15th of each month, the sums sent to Franklin were credited as payments of a monthly premium which were due on that date; (6) in this manner, premiums were applied to pay for coverage at least until August 15, 1989; (7) on August 5, 1989, Niesmann terminated his employment with Technical Metals; and (8) on February 24, 1990, Niesmann died as a result of injuries received in an automobile collision.

■■ Significant to our decision here is the operation of section 234(1) of the Illinois Insurance Code (Code), which states:

> "No life company doing business in this State *shall declare any policy forfeited or lapsed within six months after default in payment of any premium installment or interest or any portion thereof*, nor shall any such policy be forfeited or lapsed by reason of nonpayment when due of any premium, installment or interest, or any portion thereof, required by the terms of the policy to be paid, within six months from the default and payment of such premium, installment or interest, *unless a written or printed notice stating the amount of such premium, installment, interest or portion thereof due on such policy*, the place where it shall be paid and the person to whom the same is payable, shall have been *duly ad-*

*dressed and mailed with the required postage affixed,* to the person whose life is insured, or the assignee of the policy, (if notice of the assignment has been given to the company) at his last known post office address, at least fifteen days and not more than forty-five days prior to the day when the same is due and payable, before the beginning of the period of grace \*\*\*." (Emphasis added.) Ill. Rev. Stat. 1989, ch. 73, par. 846(1).

The supreme court has stated:

"Considering the terms of section 234(1), we hold that though an insurance company fails to provide the premium-due notice required by section 234(1), when the policy has remained in default for six months plus any period of extended coverage made possible by the policy's provisions, as was the case here, the policy is subject to forfeiture." (*First National Bank v. Mutual Trust Life Insurance Co.* (1988), 122 Ill. 2d 116, 122, 522 N.E.2d 70, 72.)

Thus, section 234(1) of the Code not only prohibits a declaration of the forfeiture or lapse of a life insurance policy before the completion of the six-month period unless notice as required has been given but also allows a forfeiture after that period without any such notice having been served. Here, the parties agree no notice conforming to the requirements of section 234(1) was ever served on Niesmann. Thus, a crucial question here is whether Niesmann's death occurred after the expiration of the six-month period.

Undisputedly, monthly premiums had been paid to Franklin on Niesmann's behalf in advance to cover the period up to August 15, 1989. As Niesmann died on February 24, 1990, six months and nine days had elapsed from August 15, 1989, when another premium was due, until Niesmann's death. However, in the deposition of Marge Clinton, Franklin's claims supervisor, she testified that after Niesmann's employment with Technical Metals was terminated an additional payment of $46.66 was received by Franklin and credited to a "special billing holding account" where it remained until March 2, 1990, six days after Niesmann's death, at which time the $46.66 was credited to a "special billing suspense account." Shirley Adams, another Franklin employee, testified in her deposition that the purpose of the "special billing suspense account" was to hold funds concerning monthly group policies in which a problem existed. Undisputedly, Franklin mailed a check for $46.66 to a representative of Niesmann's estate on March 8, 1990, and that tender was refused.

The insurance policy which is the subject of this suit stated in part:

"This policy is based upon the payment of premiums annually and in advance. However, premiums may be paid semi-annually or quarterly in advance. At the option of the company, premiums may be paid monthly in advance, or in any other manner made available by the company."

Page 2 of the policy sets forth a schedule for premiums indicating an annual premium of $959.04, a semiannual premium of $496.58, or a quarterly premium of $252.41.

Plaintiff maintains and the circuit court agreed that by acceptance of the $46.66 and retaining it until after Niesmann's death, Franklin impliedly agreed to a lesser premium period which covered that portion of a month that $46.66 bore to the monthly premium. This would have extended the period for which premiums were paid for more than nine days and would have prevented the six-month period of section 234(1) of the Code from expiring before Niesmann died.

A motion for summary judgment should only be granted when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c); see also *Purtill v. Hess* (1986), 111 Ill. 2d 229, 489 N.E.2d 867.) In deciding whether to grant summary judgment, a court shall construe the pleadings, affidavits, depositions, admissions, and exhibits strictly against the movant and liberally in favor of the opponent. When this is done and the record indicates all the evidence is before the court and no judgment for the respondent to the motion could ever stand, the court should grant the motion for summary judgment. (*Barnes v. Washington* (1973), 56 Ill. 2d 22, 305 N.E.2d 535; *Fooden v. Board of Governors of State Colleges & Universities of Illinois* (1971), 48 Ill. 2d 580, 272 N.E.2d 497.) The record here does not justify a summary judgment for either side.

In addition to the evidence previously recited, most of the evidence presented came from the deposition of Michael Lorch, an independent agent for Franklin. He testified (1) he attempted to contact Niesmann on August 30, 1989, September 20, 1989, and October 17, 1989, in regard to the insurance policy; (2) as early as October 17, 1989, he informed Niesmann that his policy was "no longer in force" since Niesmann had left Technical Metals; (3) he then informed Niesmann that his personal payment of $40.01 was

required to pay the past-due premium; (4) Niesmann indicated he wanted to keep the policy in force but did not have the money to pay the past-due premium; (5) he told Niesmann he would not be covered under the policy until the past-due premiums were paid; and (6) Niesmann then asked him to set up a salary deduction procedure for the payment of premiums with Niesmann's new employer.

In his deposition, Lorch further testified that (1) he attempted to set up a deduction procedure with Niesmann's new employer but was not able to do so; (2) in a conversation with Niesmann on January 2, 1990, he told Niesmann that Niesmann was not covered by the policy; (3) on January 20, 1990, he saw Niesmann in a bar and attempted to arrange a meeting with the new employer concerning a deduction procedure; and (4) from August to December 1989 he was frequently contacted by Franklin concerning the need for Niesmann to pay his premiums.

In an affidavit filed in opposition to defendant's motion for summary judgment, plaintiff stated that, if sworn as a witness, she would testify she was present at a meeting on October 17, 1989, between Niesmann, Lorch, and a person named Bob Ruder, and at no time during the meeting did Lorch or Ruder state that the insurance policy had lapsed or was not in force. Moreover, we note that if Lorch had told Niesmann the policy had lapsed or was not in force, he would have been incorrect. Niesmann was in default on his premium payments, but the policy remained in force at least until February 15, 1990, in that, had Niesmann died anytime before that date, the policy would clearly have been in force pursuant to the provisions of section 234(1) of the Code as no notice required by that section had been served. In her deposition, Marge Clinton admitted that after Niesmann died, a computer check of the records concerning the policy indicated that the policy was "in force." This could have been a mistake, but the conclusion the policy was "in force" was entirely consistent with plaintiff's theory that the $46.66 was accepted as a payment for a short premium period.

While the record clearly showed great confusion by Franklin's agents as to the status of the policy, we cannot determine, as a matter of law, that plaintiff was entitled to recover. The record does not indicate the only inference to be drawn from the confusion was that Franklin had agreed that premiums may be paid for portions of a month even for one time. If Franklin had not so agreed, no premium payment had been made covering a period after Au-

gust 15, 1989, and the six-month period of section 234(1) of the Code had expired before Niesmann died.

Relying on *Evaluation Systems, Inc. v. Aetna Life Insurance Co.* (N.D. Ill. 1982), 555 F. Supp. 116, plaintiff maintains the mere "acceptance of the partial premium" by Franklin created coverage for the portion of the premium period covered by the partial premium. There, a life insurer was alleged to have refused to pay on a life insurance policy under specific circumstances. Damages were sought for vexatious and unreasonable failure to pay. The district court held the allegations were sufficient to support recovery. The insured had sent in a premium payment less than the premium for a full year. The insurer accepted the payment but attempted to notify the insured of the need for further funds to pay the full premium. However, the insured did not receive the notice. The insured died before the premium year was three-fourths over, and the portion of the premium paid was well in excess of three-fourths of that required.

The *Evaluation Systems* policy provided that premiums could be paid annually, semiannually or quarterly or, with the insurer's consent, monthly. Unlike here, the policy further provided that a " 'change to [a different] frequency will take effect when [the insurer] accepts the premium for the changed frequency.' " (*Evaluation Systems*, 555 F. Supp. at 119.) The *Evaluation Systems* court stated:

> "It is certainly arguable *from the Policy terms* that once Aetna 'accepts' a partial premium payment that exceeds a quarterly premium, *it is contractually bound to provide coverage for the corresponding portion of the Policy year*. Controlling Illinois authorities have all inferred acceptance from the following circumstances:
>
> 1. retention of the premium check for three or more weeks;
>
> 2. eventual cashing of the check; and
>
> 3. only a later refunding of the payment." (Emphasis added.) *Evaluation Systems*, 555 F. Supp. at 121.

The *Evaluation Systems* court's emphasis upon policy terms concerning payment of a partial premium seems to indicate that court felt that acceptance by Aetna of less than the full yearly premium constituted an acceptance of a shorter premium period measured by the portion of the year to which the payment could be allocated. However, the opinion then states that theory is untenable because, under the policy, the premium periods to which a switch

could be made would have to be either quarterly or semiannually and the sums paid by the insured were not of an amount allocable to any such period. Thus, in rendering its decision, the court was not relying upon the policy provision in regard to change of frequency for payment of premium. Accordingly, the decision is supportive of plaintiff's contention here in that the court approved a theory that even without a special policy provision, acceptance of a partial premium extends the policy for a portion of the premium period measured by the portion of the required premium paid with allowance for the value to the insurer of earlier receipt of premiums.

The reference in *Evaluation Systems* to controlling Illinois authority in regard to acceptance of premiums payments is somewhat confusing. Apparently, the reference is not to acceptance of partial premium payments, because no cases speaking to that point have been called to our attention by either side. In any event, we do not deem *Evaluation Systems* to be sufficient authority to uphold a summary judgment for plaintiff here.

■ We hold that the question of whether, under the terms of the insurance policy, Franklin "made available" to Niesmann a different manner of premium payment than that earlier agreed upon is a question of fact for the trier of fact. This involves consideration of all of the evidence, including (1) the manner in which Franklin retained the $46.66, crediting it to a "special holding account" but having the use of the cash; (2) the nature of the agreement between the parties whereby payments were made to Franklin every two weeks; (3) the conversations between Niesmann and Franklin's agents; and (4) the computer record indicating the policy was "in force" at the time of Niesmann's death.

Franklin argues that no valid agreement by it and Niesmann could be inferred from the conduct of the parties because, when an express agreement exists, a different agreement may not be inferred by us from the circumstances. The cases of *Stone v. City of Arcola* (1989), 181 Ill. App. 3d 513, 536 N.E.2d 1329, and *City of Marshall v. City of Casey* (1989), 177 Ill. App. 3d 1065, 532 N.E.2d 1121, are cited. Those cases deal with the inconsistency of having an express agreement and an implied one at the same time. They do not concern the possible modification of an express agreement by subsequent action of the parties giving rise to an implied agreement. Here, the policy provided for certain premium periods but then stated that Franklin could make "available" other "manner" of payment.

Plaintiff maintains we should uphold the judgment of the circuit court on the basis that Franklin's retention of the $46.66 worked an estoppel on or a waiver by Franklin to deny coverage under the policy. Neither has been pleaded and, thus, cannot be considered at this stage.

Accordingly, we affirm the judgment appealed to the extent it denied a summary judgment to defendant but reverse the summary judgment awarded to plaintiff. We remand the cause to the circuit court of Livingston County for further proceedings.

Affirmed in part; reversed in part and remanded.

JUSTICE COOK, specially concurring:

I concur. In my view the evidence favoring plaintiff, although very strong, is not so overwhelming that a contrary verdict could never stand. See *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14; *Fooden,* 48 Ill. 2d at 586, 272 N.E.2d at 500.

Kenneth Niesmann terminated his employment August 5, 1989. Payroll deductions during his employment had paid his life insurance through August 15, 1989. A few days after August 15, Niesmann's former employer sent defendant insurer a final payroll deduction check, in the amount of $46.66, which was not enough for a full month's premium. Instead of returning the check, defendant cashed it and held the proceeds almost seven months, until Niesmann's death February 24, 1990. On March 8, 1990, defendant attempted to return the proceeds to Niesmann's estate. There is no evidence that defendant, or Niesmann, desired to terminate the policy before Niesmann's death. Defendant wanted Niesmann to pay the balance of the premium through September 15, $40.01, after which defendant would begin to bill him directly or through a new employer. Niesmann wanted to continue the policy, but was experiencing financial difficulties. At issue in this case is whether defendant manifested its intention to afford coverage for a portion of a month by accepting the $46.66 check.

Statements of intention made after the risk for which insurance was sought has transpired or after the risk period has ended, whether made by the insured or by the insurer, are inherently self-serving and suspect. The most convincing evidence consists of the actions taken by the parties before the outcome was apparent. It is not particularly significant that the proceeds here were held in a "special billing account," in a "special billing suspense account," or in some other account. The inaccurate statements by the independent insurance agent,

Lorch, as he attempted to persuade Niesmann to continue the policy in force, provide little indication of defendant company's intent as to the application of the partial payment. The strongest evidence in this case is that defendant received the check for the partial premium, cashed it, and made no attempt to return the proceeds for almost seven months.

The cashing of an insured's check and retention of the proceeds has been held an acceptance of premium in cases where the facts were much more favorable to the insurer than here. In *Van Hulle v. State Farm Mutual Automobile Insurance Co.* (1969), 44 Ill. 2d 227, 254 N.E.2d 457, a premium check to reinstate an automobile insurance policy was sent to the insurer after an accident in which one of the insureds was killed. The insurer was separately notified of the accident, but nevertheless held the check for 22 days, eventually cashed the check, then attempted to make a refund three days later. The supreme court affirmed a declaratory judgment for the insured, noting that the cashing of a check is significant and indicates acceptance. In *Krumwiede v. Bankers Life & Casualty Co.* (1981), 95 Ill. App. 3d 861, 420 N.E.2d 745, the insured sent a reinstatement form and a check on July 8, which the insurer received July 18. The insured had emergency surgery, which would have been covered by the policy, on July 22. On August 15 the company advised it could not reinstate the policy, but on August 17 the insurer cashed the check, then attempted to make a refund on September 26. The appellate court overturned a jury verdict for the insurer, holding that under *Van Hulle*, as a matter of law, the insurer had accepted the check. The fact that neither one of these cases involved a partial premium is not significant. What is important is that these cases involved disputed premium payments, and in both cases the cashing of the check and retention of the proceeds was held to constitute an acceptance of the premium. Based on these two cases, the United States District Court in *Evaluation Systems* (555 F. Supp. at 121) held that an insurer accepted a $563.25 premium check (rather than the $613.50 called for by the policy) by cashing it immediately and retaining the proceeds for some three months before attempting to refund the payment. *Evaluation Systems* did involve the retention of a partial premium.

The policy in this case provided that "[a]t the option of the company, premiums may be paid monthly in advance, or in any other manner made available by the company." I view that language as so similar to the policy language in *Evaluation Systems* that the reasoning of that case, which I find persuasive, should be followed here. Even if the policy were silent as to the power of defendant to accept

partial premiums, the parties could, by their conduct if nothing else, agree that such payments could be accepted. An insurance contract is not a contract for the sale of goods, but the language of section 2–208(1) of the Uniform Commercial Code—Sales is informative: "any course of performance accepted or acquiesced in without objection shall be relevant to determine the meaning of the agreement." (Ill. Rev. Stat. 1989, ch. 26, par. 2–208(1).) A contract can be modified by mutual agreement, or by estoppel, and the two are sometimes difficult to distinguish. See *Nagle v. General Merchandising Corp.* (1978), 58 Ill. App. 3d 344, 348, 374 N.E.2d 1137, 1141.

In response to the insurer's argument that the *Van Hulle* decision outlined a formula for defrauding insurance companies, the supreme court in that case observed the problem could be easily overcome by an adjustment in the insurer's procedure for handling lapsed policies. The same is true in this case. Defendant can easily avoid undesired extension of coverage by not holding, cashing, or retaining the proceeds of premium checks which are in incorrect amounts. Insurance companies, of course, are in the business of covering risks, not returning premium checks, and it is not to be expected that they would refuse a check where there is a possibility of coverage being continued.

JUSTICE STEIGMANN, concurring in part and dissenting in part:

Although I concur with that portion of the majority opinion that reverses the summary judgment awarded to plaintiff, I respectfully dissent from that portion which affirms the trial court's denial of summary judgment to defendant. For the reasons that follow, I believe that this court should remand the cause to the circuit court with directions to enter summary judgment for defendant.

The majority opinion states that "the policy provided for certain premium periods but then stated that Franklin could make 'available' other 'manner' of payment." (231 Ill. App. 3d at 838.) Although the majority opinion is correct in so noting, this record contains no evidence at all that the parties agreed to a "manner of payment" of *less* than one month, which is what this case is all about.

In my judgment, the parties agreed to monthly payments, and as a convenience to decedent, Franklin accepted payments every two weeks that had been deducted from decedent's paycheck. Franklin's accommodation of decedent in this fashion did not render the premium payment period into 24 separate periods, with 15-day incre-

ments of insurance coverage, for purposes of section 234(1) of the Code.

In my view, no genuine issues of material fact exist in this case regarding how decedent paid his insurance premiums or how they were handled by Franklin. As a matter of law, the conduct of the parties in this case after the insurance policy was written did nothing to alter the terms of that policy that "premiums [were to] be paid *monthly*." (Emphasis added.) Defendant is entitled to summary judgment.