Bank of Lyons, an Illinois Banking Corporation, Plaintiff, v. Alvin A. Schultz, Mary Schultz, Chicago City Bank and Trust Company, Individually and as Trustee Under Trust 5565 and 5596, et al., Defendants, Occidental Life Insurance Company, Defendant-Appellee, Mary Schultz, Defendant-Appellant.

Gen. No. 53,194.

First District, First Division.

April 21, 1969.

Edward J. Barrett, of Chicago, for appellant.

Peterson, Lowry, Rall, Barber & Ross, of Chicago (Owen Rall and Peter M. Sfikas, of counsel), for appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

The defendant, Mary Schultz, appeals from a Decree approving the Master's Report in favor of defendant, Occidental Life Insurance Company (hereinafter referred to as Occidental), and against the defendant, Mary Schultz. The Master's Report recited that a certain life insurance policy in the amount of $25,000 and written by Occidental on the life of Alvin A. Schultz, the deceased, had lapsed without value prior to the insured's death. Mary Schultz was the beneficiary of the policy.

The action first arose as a Creditor's Complaint filed by the plaintiff, Bank of Lyons, joining the judgment debtor Alvin A. Schultz and inter alia, the appellant and appellee herein as defendants. Defendant Occidental filed, as part of its answer to the Creditor's Complaint, a counterclaim alleging that there were no proceeds due under the policy in question because the insured failed to pay a premium when it became due and the loan value of the policy was insufficient to pay the premium under the automatic loan provision. The issue raised by Occidental's counterclaim and Mary Schultz's answer thereto was referred to a Master and it is the Decree approving his report that is being appealed.

The insurance policy in question was issued on September 12, 1951, on the life of Alvin A. Schultz, the owner of the policy. At the time of the death of Alvin A. Schultz, who was the divorced husband of Mary Schultz, the policy was payable under a beneficiary designation dated August 25, 1954, running to "Mary Schultz, wife of insured, if living . . . ." The right to revoke or change the beneficiary designation was reserved by the insured.

The insurance policy also contained a provision that when any premium remains unpaid after its due date, such due date is the date of default in payment of premium, and that if any premium remains in default after the days of grace, "this policy shall cease subject to the provisions for non-forfeiture contained herein." The premium due on September 12, 1962, was not paid. The policy having lapsed for nonpayment of premium, the policy was then on the "automatic premium loan" which provides in part:

> If, before default in payment of any premium satisfactory written request has been filed with the Company, and has not been previously revoked in writing, the Company will, after loans have become available hereunder, charge as a loan against this policy any premium, including the premiums for any supplemental agreements attached thereto, which thereafter becomes due and remains unpaid, provided the entire indebtedness on this policy shall not exceed the cash value.

The automatic premium loan provision provides further that "[s]uch automatic premium loans shall be subject to the terms and conditions stated in the loan provision of this policy." The provision relating to "loan" provides that:

> The maximum amount which the Company will loan at any time is the cash value of this policy at the

455

end of the policy year during which application for the loan is made, subject to deduction of any unpaid premium or premiums for the then current policy year and all existing indebtedness hereunder.

The insured was notified in advance of September 12, 1962, that on that date there would be due a total of $486.15 consisting of the annual premium of $387.75 and loan interest of $98.40. This premium was not paid. Mary Schultz testified that the premium notice was received and that the insured was in jail at the time. However, she had authority to open his mail and she opened the premium notice. Mrs. Schultz said that she phoned a Miss Gross, one of Occidental's cashiers, because the insured had previously dealt with this cashier, and asked her if the premium could be paid by loan. Mary Schultz testified that the cashier told her that she would call her back and let her know if it was possible. Shortly thereafter, she stated, she received a communication from Occidental dated December 17, 1962. This letter advised, in part, "that the last premium which was due on your policy was not paid. . . . If you haven't already applied for reinstatement, we will be glad to send you an application. You may use the back of this letter for your reply if you wish." Mrs. Schultz wrote on the reverse side of the notice "Please be advised that this premium should be paid through the automatic loan clause that is in the policy. Trusting that this matter will be taken care of. . . ." Occidental replied on December 28, 1962:

Your reply to our recent lapse letter is appreciated. It is true that both your policies (there was another policy not involved in this appeal) have the automatic premium loan provision. However, this provision can only pay premiums as long as there is cash value. The cash value of Policy No. 3208619, available as of December 12, 1962, was $2,150.00 the

amount of loan outstanding. Since there was no further value available for application to the September 12, 1962, annual premium, it was necessary to lapse the contract for nonpayment of the premium due on September 12. . . .

Mary Schultz testified further that in a subsequent phone conversation during the first week of January 1963, she was informed by Miss Gross that it would be arranged that the policy be paid "at which time I marked this on the receipt 'paid by loan.' " Mrs. Schultz said that when Alvin Schultz was released from jail in February of 1963 he telephoned Miss Gross in her presence to find out the status of his policy. She heard him say to Miss Gross that two or three hundred ought to take care of it. She said she gave him the money. Mary Schultz said she called Miss Gross again on May 21, 1963, and informed her that the insured had passed away and asked what she should do. "She answered me, the only thing I had to do was turn the policies in and that it would follow a normal procedure with the—payments would be made to me as beneficiary on both policies. She never stated that the policies would not be paid. She merely extended her sympathies, that is all I recall."

Esther Gross testified that she had been employed by Occidental during the period in question. She stated that her duties as cashier were to receive premium payments and to take care of loans, surrenders, policy changes and death claims. She said she had no authority to "nor did I ever extend the time of the payment of insurance premiums on policies which had lapsed." She testified further that at no time did she tell Mrs. Schultz that the annual premium on the policy in question was paid by a loan on the other policy issued to Alvin Schultz. She said she did not believe she ever told Mrs. Schultz that the amount of the cash value on the other policy was sufficient to pay the premium due. Miss Gross said that she saw Alvin

457

Schultz in the Occidental office some time after the lapse of the policy and at that time he made no payment on the policy nor did she recall that he sought to reinstate the policy. She also did not recall that she told Mary Schultz that the company would pay the death benefit. On cross-examination she testified that she did not remember having any phone conversations with Mrs. Schultz prior to the insured's death.

Edward Carnal testified that he was the manager of the Chicago agency of Occidental. He said that if a policyholder requests a loan through a regular loan form, the form is sent to the home office. If there is sufficient loan value in the policy, the company goes ahead and makes the requested loan. Mr. Carnal also said that if a policyholder requests, through a loan application, that a loan be made against a certain policy to pay for the premium on a second policy, that presumably the request would be honored if there is sufficient loan value in the first policy.

Darrell Hays, an associate manager of Policy Loan and Surrender Department of Occidental testified that their records showed that the total owned cash value of the policy in issue was $2,050 and that there was a loan against it for $2,050, leaving no cash value. Mr. Hays also testified that the September 12 premium was never paid. He stated that by the terms of the policy it is necessary for a policyholder at the time of the due date of a premium to make a special application for the application of the loan value, if the policy was on the automatic loan provision. Hays said that when Alvin Schultz died in May 1963, their records showed that the policy had lapsed on September 12, 1962, without value, and for that reason Occidental refused to make payment. He said the company, under the automatic premium loan provision, does not make any transfer of loan value from one policy to another automatically. He related various facts and

figures about the policy not here contested from which he computed that the cash value from the second policy which the policyholder might have applied for on September 12, 1962, was $147.38. A loan agreement directing the transfer of money, signed by the insured and all interested parties, he said, was the method by which the loan value on one policy may be applied to the payment of a premium on another policy. He stated that no such agreement was received by the company and that at no time, on or after September 12, 1962, was there ever a sufficient net loan value available on the instant policy.

 Initially, we agree with counsel for Mary Schultz that the courts of this state are loathe to enforce a forfeiture, and are prompt to seize on any circumstances which indicate a waiver or which gives rise to an estoppel. Forfeiture of life insurance policies is not favored, and unless the circumstances show a clear intention to claim a forefeiture for non-payment of the premium, forfeiture will not be enforced. Baxter v. Metropolitan Life Ins. Co., 318 Ill 369, 149 NE 243. The Supreme Court further stated in Baxter at page 372, 149 NE at 244, that:

> Waiver by an insurer results when it by an act, statement or course of conduct toward the assured recognizes the policy as existing though the time for payment of the premium has expired . . . . If the conduct of the insurer is such as to induce the assured to believe that a forfeiture will not be insisted upon, the insurer will be held to be estopped from taking advantage of such forfeiture.

The defendant, Mary Schultz, contends that the insurance policy in question was in full force and effect on May 20, 1963, the date of the death of the insured by virtue of an oral waiver of nonpayment of premiums by the insurance company's agent, Miss Gross. Mrs. Schultz argues that Occidental held out to their policyholders

that Miss Gross, their cashier, had authority to waive or extend the time for the payment of premiums. The only competent evidence on this point, Mrs. Schultz maintains, is to the effect that Esther Gross, whom she knew to be an Occidental cashier, told her that the policy premiums would be paid. Mary Schultz claims that this evidence is uncontradicted because Esther Gross could not remember any conversations with her prior to the insured's death and that, therefore, Miss Gross could not competently deny Mrs. Schultz's testimony about the content of such conversations.

The Master, to whom the issue was referred, found against Mrs. Schultz. He held that repeated notices from Occidental informed Mrs. Schultz that the policy had lapsed and that the cash surrender value was insufficient to support the automatic loan provision. He concluded that Mrs. Schultz should have inquired about the authority of Miss Gross, especially after she received the abovementioned notices from Occidental. Finally, the Master found that Occidental had not held out to Mrs. Schultz that Miss Gross had authority to waive or extend payment of premiums. The decree of the Circuit Court approved the findings of the Master and held that Mary Schultz was not entitled to recover any amount from Occidental by reason of the fact that the policy had lapsed for nonpayment of premiums and was not in force or effect at the date of the death of the insured.

■ The law is well settled in Illinois that where a master-in-chancery has heard the evidence, his findings of fact do not carry the same weight as the verdict of a jury, nor the findings of the chancellor where the witnesses have testified before him; nevertheless, the master's findings are entitled to due weight on review, and, when approved by the chancellor, a reviewing court is not justified in disturbing them unless they are manifestly against the weight of the evidence. Majewski v.

460

Gallins, 17 Ill2d 92, 160 NE2d 783; Michna v. May, 80 Ill App2d 281, 225 NE2d 391.

■ We have concluded that the evidence in this record supports the findings of the Master and that the findings are not against the manifest weight of the evidence. The record clearly establishes that the premium due September 12 was never paid. Even assuming arguendo that Miss Gross had apparent authority to waive premiums, and we do not so hold, it would have been incumbent upon the insured, under the policy provisions, to file a written application for extension of his payment. The record shows that there had been a previous default in the payment of a premium on this same policy and that on that occasion Alvin Schultz sent in an application for reinstatement with an appropriate letter. Thus, we are here concerned with a procedure known to the insured for reinstatement. Nor were the acts of the company misleading to the insured or to Mrs. Schultz. A notice was given to the insured of the premium payment that was due. He was notified by letter that his "grace period" had expired. Subsequent to the request by Mrs. Schultz that the premium should be paid through the automatic loan clause she was informed by the company in writing on December 28, 1962, that there was no further value available for application to the September 12, 1962, annual premium.

We have carefully examined the authorities submitted to us on the proposition that a lapse in payment may be waived by an agent with apparent authority or where the insurer's actions have been such as to induce the belief in the insured that strict compliance with the terms of the policy will not be required. All of these cases deal with fact situations wherein the courts found apparent authority or where the insurer's actions had been found to mislead the insurer. These cases are unlike the facts in the case at bar and, therefore, are not controlling.

Since it is our opinion that the findings of the Master who saw and heard the witnesses were amply supported by the evidence, the decree of the Circuit Court is affirmed.

Decree affirmed.

ADESKO, P. J. and MURPHY, J., concur.