ANTHONY KELLY *et al.*, Plaintiffs-Appellants, v. ECONOMY FIRE AND CASUALTY COMPANY, Defendant-Appellee.

Third District   No. 3—89—0219

Opinion filed March 8, 1990.

Peter Denger, of Rock Island, for appellants.

Katz, McAndrews, Balch, Lefstein & Fieweger, P.C., of Rock Island (Linda E. Frischmeyer, of counsel), for appellee.

JUSTICE SCOTT delivered the opinion of the court:

Plaintiffs appeal from an order of the trial court dated March 9, 1989, denying plaintiffs' motion for reconsideration on the summary judgment granted defendant. Both parties acknowledge there are no

material issues of fact and the question to be resolved is one at law.

Plaintiffs were mortgagees under a policy of fire insurance issued by defendant, effective October 1, 1984, covering property located in Rock Island, Illinois. On July 29, 1986, a notice of expiration was sent to both the insureds and the plaintiffs as mortgagees which, in part, stated:

> "We would like to continue your insurance coverage. However, unless premium is received by the company by 08/13/86, your policy will terminate on the inception date of 07/25/86 in accordance with the policy provisions for non-payment.
>
> If premium is received by the company after 08/13/86, your policy may be reinstated, at the option of the company, as of the date your payment is received.
>
> Attention mortgagee and/or lienholder: your interest as lienholder will terminate on 08/13/86 in accordance with the policy provisions."

On August 9, 1986, one of the primary insureds, Elizabeth Moore, sent a check in the correct amount for the July 25, 1986, quarterly premium to Lohman Brothers Agency (Lohman), the agency which originally wrote the policy. This check was received by Lohman on August 14, 1986, and then forwarded to defendant, who received it on August 18, 1986. On August 23, 1986, a fire occurred causing extensive damage to plaintiffs' property, and notice of the loss was reported to defendant on August 26, 1986. On August 27, 1986, defendant returned the insured's check to Lohman with the following letter:

> "We are returning the insured's check as it has been received too late to apply. The premium on this policy was due July 25, 1986.
>
> We did send a late notice extending this due date to August 13, 1986. However, as you can see the insured's check was received August 18, 1986. Since it was too late to apply we will be unable to accept this and the policy will lapse effective July 25, 1986 [in] accordance with our previous notice."

After the case was filed herein, discovery depositions revealed that late premium payments on this policy had been made in the past and accepted by defendant. In at least one instance defendant lapsed the policy but later reinstated on the date the late payment was received. Glenda Yeager, defendant's employee, stated the reason why the policy was reinstated previously is that on the first two instances the customer bill department had authority to automatically reinstate the policy. When a third lapse situation occurred, however, the policy was required to be sent to the underwriting department for a deter-

mination of whether the policy should be reinstated. This "in-house" policy of defendant was unknown to plaintiffs but was generally referred to within the insurance policy.

■ The parties agree there are no material questions of fact and that the matters to be decided are at law. Summary judgment "shall be rendered without delay if the pleadings, depositions, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(c).

Plaintiffs propose three theories why coverage should exist. First, plaintiffs believe defendant has waived any right to rely on the notice provision for terminating the policy because it had reinstated the policy in the past after the policy had lapsed. Moreover, since plaintiffs were not privy to defendant's "in-house" rules, they should not be binding on plaintiffs. As authority on this issue, plaintiffs cite *Van Hulle v. State Farm Mutual Automobile Insurance Co.* (1969), 44 Ill. 2d 227, 254 N.E. 2d 457, and *Tesk v. Sagerstrom* (1942), 317 Ill. App. 231. In *Van Hulle* and *Tesk*, the respective courts each concluded that the insurance company or labor union involved, by its conduct, had waived its right to rely on policy provisions regarding termination of insurance coverage or union death benefits. In *Van Hulle*, the court basically relied on the insurance provider's intervening notice of loss and subsequent acceptance of a tendered premium payment in holding that the insureds were entitled to retroactive coverage. In *Tesk*, the court determined that defendant labor union's prior course of dealing in frequently accepting union dues from decedent on an irregular basis constituted waiver of the labor union's right to rely on the union contract regarding union dues when it was "payday" time for the union. We do not disagree with the decisions of the respective courts in *Van Hulle* or *Tesk*, but do not consider those cases controlling.

■ Waiver is the voluntary, intentional relinquishment of a known right. Although waiver may be implied, it requires that an intention to waive be clearly inferred from the circumstances (*Tibbs v. Great Central Insurance Co.* (1978), 57 Ill. App. 3d 866, 373 N.E. 2d 492.) Obviously, whether waiver exists must be based on the particular circumstances of each case. We do not, however, believe waiver exists in this case.

■ Plaintiffs received notice that the policy would lapse for nonpayment effective August 13, 1986, unless payment was received by that date. Any premium payment received after August 13, 1986, would, at the company's discretion, cause the policy to be reinstated

as of the date the payment was received. The earliest date plaintiffs could argue as the receipt date of the premium payment was August 14, 1986, the date it was received by Lohman. It was not received by defendant as required by the notice, however, until August 18, 1986. Thus, using either date, the payment was made after the policy had lapsed for nonpayment, and it was within defendant's discretion whether to reinstate the policy. Defendant does not dispute that it had accepted late premium payments in the past and reinstated the policy, but asserts that such actions were pursuant to valid in-house procedures that were generally referred to in the insurance policy and do not constitute waiver. We agree. Undisputed deposition testimony of defendant's employees related that pursuant to company procedure, on the third lapse the policy was sent to underwriting for a determination of whether to continue coverage. We do not believe defendant's in-house policy created a waiver of defendant's right to not reinstate the policy but, in fact, benefited plaintiffs by providing no less than two automatic reinstatements after lapses for nonpayment of premium.

■ We also consider the length of time defendant took to advise that the policy would not be reinstated was a reasonable length of time, and therefore, no acceptance of the tendered check occurred. Defendant maintains that it held the premium check for nine days before returning it to Lohman. If the date of receipt of the check is to be when Lohman received the check, then it was held for a total of 13 days. In *McKinney v. Country Mutual Insurance Co.* (1987), 154 Ill. App. 3d 854, 507 N.E. 2d 940, the court determined that a premium payment made after the termination dated constituted an offer to purchase insurance and "an insurance company should be allowed a reasonable amount of time under these circumstances to decide whether or not to accept or approve a late premium payment." (*McKinney*, 154 Ill. App. 3d at 858.) The court thus determined that nine days were not an unreasonable length of time for the insurance company to hold a late premium payment before rejecting same. *McKinney*, 154 Ill. App. 3d 859, 507 N.E. 2d 940.

This situation is also not analogous to *Van Hulle*, wherein the insurance company cashed a check approximately one month after receiving notice that an accident had occurred and some two months after the policy had lapsed for nonpayment. Under those circumstances, the court found that somewhere in the process the insurance company had accepted the check and waived its right to terminate the policy. *Van Hulle*, 44 Ill. 2d 227, 254 N.E. 2d 457.

■ The most difficult aspect of this waiver issue is plaintiffs'

claim that defendant denied coverage solely on the basis that it had knowledge of an intervening loss. "To imply the waiver of lapse the insurer must have knowledge of the intervening loss." (*Van Hulle*, 44 Ill. 2d at 231.) In this case, notice of the loss was given defendant on August 26, 1986, and the letter rejecting the late premium payment was sent August 27, 1986. In *Van Hulle*, the insurer accepted the late payment 22 days after receiving notice of the loss. In this case, defendant refused to accept the tendered payment one day after receiving notice of the loss. Had defendant accepted the premium payment in this cause, then waiver may be imputed under *Van Hulle*, but since no acceptance occurred, we do not believe the mere fact defendant had in its possession a tendered premium payment at the time it received knowledge of a loss was sufficient to automatically cause defendant to waive its right to refuse reinstating the policy. To so hold would encourage fraud upon insurance companies, although we see no evidence of fraud in this case.

■ We also find no relief for plaintiffs under the theory of estoppel. No facts indicate plaintiffs relied upon any action of defendant causing plaintiffs to believe the premium payment need not be received by the company prior to August 13, 1986, to avoid a lapse or that the policy would be reinstated upon the tender of a late payment. Likewise, we do not consider the language of defendant's notice to be conciliatory in nature. The notice explicitly stated that coverage would be reinstated from the date payment was received at the sole discretion of defendant. We do not consider this language an invitation to make a premium payment, but a warning of the possible consequences if a payment was received after August 13, 1986.

For all the foregoing reasons, we affirm the decision of the trial court.

Affirmed.

HEIPLE, P.J., and WOMBACHER, J., concur.