TIME INSURANCE COMPANY, Plaintiff-Appellee, v. SUSAN VICK, Special Adm'x of the Estate of John W. Vick, Deceased, Defendant-Appellant.

First District (6th Division)   No. 1—91—3825

Opinion filed July 30, 1993.

John J. Lag, of Chicago, for appellant.

William E. Hoversen, Jr., of Chicago, for appellee.

PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

On March 30, 1983, the decedent, John W. Vick, submitted an application for life insurance to plaintiff, Time Insurance Company (Time). Time accepted the application and issued an annually renewable term life insurance policy. The policy, dated April 1, 1983, provided for a death benefit of $100,000.

Although the decedent initially elected to pay premiums on a monthly basis, as indicated by his application, he later changed the premium payment plan from a monthly to a quarterly interval. His insurance agent handled his request, which was received by Time along with the balance of the first quarterly premium on May 16, 1983. Subsequent to this mode of payment change, the decedent did not timely pay the next quarterly premium due on July 1, 1983, which caused the policy to lapse. On September 30, 1983, Time requested that the decedent complete a supplemental application in order to be considered for reinstatement. On October 5, 1983, the decedent executed the application and submitted it along with the back premium. Time approved the application, and the decedent's policy was reinstated effective July 1, 1983.

There were 14 payments due under the policy from the date of its inception through the date of decedent's death. Thirteen of those payments were received after their respective due dates, with 5 of the 13 being made after the expiration of the policy's 31-day grace period.

With regard to the premium due for the quarter beginning April 1, 1986, the decedent did not mail his payment along with the April 1, 1986, quarterly premium notice until June 10, 1986, which caused the policy to again lapse. Time negotiated the check on June 16, 1986. On June 24, 1986, Time forwarded to the decedent a request to complete a supplemental application for reinstatement of the lapsed policy. The decedent executed the supplemental application on or about July 25, 1986, and it was received by Time on July 28, 1986. On July 29, Time approved reinstatement of the policy, with an effective date of April 1, 1986, based on the medical history supplied by decedent on the sup-

plemental application. Unbeknownst to Time, however, decedent died on that same date from a self-induced alcohol and thioridazine overdose. The decedent died intestate and was survived by his wife, Susan Vick, defendant in this cause, and their minor daughter, Melissa Vick. Decedent did not designate a beneficiary when he purchased the policy.

On August 4, 1986, defendant mailed a check to Time together with the premium payment stub for the July 1, 1986, premium. Time negotiated the check on August 6, 1986. On August 30, 1986, defendant, acting through her attorney, informed Time of the decedent's death and demanded full payment of the policy amount. In a letter dated November 10, 1986, which defendant received on November 24, Time advised defendant's attorney that the policy had been reinstated based on material misrepresentations made by the decedent in his supplemental application, and that, as a result, it was denying payment of the benefits and rescinding the policy as of the effective date of the reinstatement, April 1, 1986. Time enclosed with its letter a check in the amount of $315.60 for the premiums paid on said policy subsequent to the date of the lapse. Defendant refused to accept the check.

Time thereafter filed a complaint seeking judicial rescission of the reinstatement of the subject policy as well as its cancellation based on material misrepresentations of fact made by the decedent on his supplemental application. Time also requested the court to issue an order requiring defendant to accept the sum of $315.60 as full and final satisfaction of all demands against it under said policy and to pay the costs it incurred in bringing this action. On Time's motion, defendant was appointed the special administratrix of decedent's estate for the purpose of defending the action. Defendant then petitioned the court to appoint her as special administratrix for the purposes of prosecuting or defending this action and filed a counterclaim at law seeking the proceeds of the policy, interest on the proceeds from the date of the decedent's death, and an additional sum of $25,000 plus reasonable attorney fees and other costs.

On October 10, 1990, Time filed a request to admit facts pursuant to Supreme Court Rule 216 (134 Ill. 2d R. 216). Defendant did not respond. On May 15, 1991, the trial court entered an agreed order admitting the facts contained in the request to admit as true for purposes of this action. Defendant, therefore, admitted that decedent had been hospitalized on four separate occasions from July 12, 1983, through September 15, 1985, for the treatment of acute and chronic alcoholism, was treated on approximately a weekly basis as an outpa-

tient by a psychiatrist from September 16, 1985, through July 25, 1986, for major depression and alcohol dependence, received and ingested the medications thioridazine and antabuse for the treatment of the respective illnesses, and died as a result of alcohol and thioridazine toxicity, leaving a note in which he indicated that he intended to end his own life. Time then filed a motion for summary judgment, and defendant subsequently filed her own such motion.

On October 23, 1991, the trial court granted Time's motion for summary judgment and ordered defendant to accept the sum of $315.60 in full and final satisfaction of all demands against Time under the policy. In addition, the reinstatement of the insurance policy was rescinded and said policy was cancelled. It is from this order that defendant appeals.

Defendant contends that: (1) Time has waived its right to terminate the life insurance policy for nonpayment of the premium due April 1, 1986, by having previously accepted late payments; (2) Time is estopped from terminating the life insurance policy for nonpayment of the April 1, 1986, premium because it received and accepted the premium after the grace period expired; (3) Time did not sustain its burden of proving that it properly effectuated the termination of the policy within six months of April 1, 1986, the date of the decedent's alleged default arising from nonpayment of the premium; and (4) alternatively, a genuine issue of material fact exists regarding the payment of premiums or termination of the policy.

The central issue in this case is whether the subject policy properly lapsed. Defendant concedes that if the policy did properly lapse, the decedent's estate would not be entitled to the policy proceeds because the decedent was not insurable at the time of reinstatement. Defendant, therefore, does not rely on Time's reinstatement of the policy on July 29, 1986, but rather contends that the decedent's policy did not properly lapse as a result of the nonpayment of the premium due April 1, 1986, within the 31-day grace period provided by the terms of the contract. Conversely, Time avers that the subject policy was reinstated after it had properly lapsed, but that such reinstatement was based on material misrepresentations made by the decedent on his supplemental application which now requires rescission of the reinstatement.

■ Defendant first contends that Time, by its previous acceptance of late payments made by the decedent, has waived any right it may have had to declare a forfeiture or lapse of the decedent's life insurance policy for failure to pay the premium due April 1, 1986, before or within the 31-day grace period. Defendant points out that

Time had previously accepted three payments from the decedent after expiration of the 31-day grace period without forfeiting or lapsing the policy, or requiring a reinstatement application and proof of insurability.

It is well established that the law does not favor the forfeiture of life insurance policies, and unless the circumstances show a clear intention to claim a forfeiture for nonpayment of the premium, such forfeiture will not be enforced. (*Bank of Lyons v. Schultz* (1969), 109 Ill. App. 2d 453, 248 N.E.2d 812.) An insurer may waive a forfeiture provision in an insurance policy by an act, statement or course of conduct toward the insured which recognizes the policy as existing, although the time for payment of the premium has expired. (*Bank of Lyons*, 109 Ill. App. 2d 453, 248 N.E.2d 812.) Furthermore, if the conduct of the insurer is such as to lead the insured to believe that a forfeiture will not be insisted upon, the insurer will be estopped from taking advantage of such forfeiture. *Bank of Lyons*, 109 Ill. App. 2d 453, 248 N.E.2d 812.

In the present case, defendant initially alleges that 5 of the 14 payments due under the policy from the date of its inception through the date of the decedent's death were received after the expiration of the policy's 31-day grace period, with Time requesting only one reinstatement application in addition to the one at issue. A close reading of the record reveals that defendant's allegation is misleading.

The policy in question includes a grace period provision which provides:

"You have 31 days to pay each premium after it falls due. Any premium unpaid at the end of the Grace Period will be in default. The policy will then terminate ***."

It also contains a reinstatement provision which states:

"This policy may be reinstated at any time within five years after default in payment of premium. Reinstatement is subject to the conditions that follow. (1) The request must be made within five years after the policy lapsed. (2) You must show evidence satisfactory to Time that you are still insurable. (3) You must pay all overdue premiums with interest from the date due of each at the rate of 6% compounded annually."

The deposition transcript of Robert Reindl, the individual in charge of Time's life policyholder service department, reveals that Time's computer billing service generates a lapse notice after the grace period has expired when payment for a premium due has not been received. The lapse notice provides as follows:

"Your policy lapsed at the end of the grace period unless otherwise provided in the contract. However payment of the amount overdue will be accepted if received by the company during the insured's life time and on or before 60 days of the due date. After this offer expires, application for reinstatement will be required."

A written offer to extend the time for payment of a premium, such as the one contained in the lapse notice above, is sanctioned by section 235 of the Illinois Insurance Code (the Code) (Ill. Rev. Stat. 1985, ch. 73, par. 847).

A summary of the premium payments made under the subject policy, which is contained in the record, indicates that only three of the five payments made after the expiration of the 31-day grace period were made more than 60 days after the due date; those payments were for the premiums due April 1, 1983, July 1, 1983, and April 1, 1986.

The deposition testimony of Reindl indicates that the column on the payment summary entitled "Date Premium Received" reflects the date the premium was processed by Time, not necessarily the date the monies were received. According to Reindl, although Time did not have any record as to when it actually received the monies, it could have requested a copy of the check from its bank, and he estimated that Time would have received the check within 24 hours of the date stamped on the check by the bank.

The payment summary reveals that the balance of the premium due for the quarter beginning April 1, 1983, was paid more than 60 days after the due date; however, Time's employee, Debbie Socolick, who worked in the policy service department at that time, testified at her deposition that Time received a written request from the decedent's insurance agent to change the premium payment interval on the subject policy from monthly to quarterly. The request was received by Time on May 16, 1983, and was accompanied by the balance of the premium due for the first quarter. That balance, however, does not appear on the payment summary until July 19, 1983, due to the mode of payment change. Therefore, under the circumstances, a reinstatement was not necessary as the balance of the premium due was received by Time within 60 days of the premium due date. It should be noted that a premium based on a monthly interval was collected from the decedent at the time he submitted his application on March 30, 1983.

With regard to the premiums due July 1, 1983, and April 1, 1986, which the decedent paid more than 60 days after the due date, the

record reveals that Time advised decedent his policy had lapsed and requested that he submit a supplemental application demonstrating evidence of insurability so that he could be considered for reinstatement. The decedent complied by completing and signing two supplemental applications dated October 5, 1983, and July 25, 1986. On both occasions, the policy was reinstated and made effective in 1983 and 1986, respectively. Defendant admitted, in a signed affidavit, that the decedent received, signed and mailed the supplemental application at issue to his insurance agent on July 25, 1986. The record, therefore, reveals that Time adhered to its lapse policy without exception. Consequently, it has not waived its right to declare a forfeiture or lapse of the subject policy for nonpayment of the April 1, 1986, premium within the 31-day grace period as there was no conduct on its part which would have led the decedent to believe that a forfeiture would not be enforced.

Defendant relies heavily on *Baxter v. Metropolitan Life Insurance Co.* (1925), 318 Ill. 369, 149 N.E. 243. That case, however, is distinguishable. In *Baxter*, our supreme court upheld this court's finding that the insurer had, by its conduct, waived its right to insist on payment in accordance with the policy's terms by virtue of its having previously accepted payments made by the insured, after expiration of the policy's 31-day grace period. Although the issues in *Baxter* and the present case are analogous, the facts differ in one major respect: the policy in *Baxter* did not contain a lapse notice provision as did the policy here, which Time consistently enforced.

It is undisputed that Time had accepted late premium payments in the past and, on one occasion, prior to the present one, reinstated the policy. However, such actions were pursuant to valid company policies referred to in the insurance policy and do not constitute waiver. *Kelly v. Economy Fire & Casualty Co.* (1990), 196 Ill. App. 3d 337, 553 N.E.2d 412.

■ Defendant next contends that Time is estopped from terminating the policy for nonpayment of the premium due April 1, 1986, because it received and accepted the premium payment from decedent after expiration of the policy's grace period. Defendant argues that Time made no attempt until November 10, 1986, to refund the premium to the decedent which it received and deposited on June 16, 1986. According to defendant, the deposition testimony of Kathy Strozinsky, the underwriter who handled the reinstatement of decedent's policy, demonstrates that Time did not follow company policy when it failed to refund the decedent's premium payment 30 days after sending its June 24, 1986, letter to him and not receiving the reinstate-

ment application it requested from him. Strozinsky stated that rather than closing out the decedent's file and refunding his premium, Time reinstated his policy. Furthermore, the deposition testimony of Reindl, defendant asserts, provides similarly, and, in addition, establishes that the best evidence of Time's receipt of a premium payment is the decedent's cancelled check or money order. This last point is also noted on the back of the premium payment notices sent to decedent and provides:

> "Record of Payment Your cancelled check or money order stub will be your receipt."

The doctrine of estoppel arises by operation of law and acts as a bar to the rights and privileges of an insurer where it would be inequitable to permit their assertion. (*National Discount Shoes, Inc. v. Royal Globe Insurance Co.* (1981), 99 Ill. App. 3d 54, 424 N.E.2d 1166.) Unlike the doctrine of waiver, such relinquishment need not be voluntary, intended or desired by the insurer; however, the doctrine of estoppel does "necessarily require[ ] some prejudicial reliance of the insured upon some act, conduct or non-action of the insurer." *National Discount Shoes*, 99 Ill. App. 3d at 59, 424 N.E.2d at 1170.

In *Garde v. Inter-Ocean Insurance Co.* (7th Cir. 1988), 842 F.2d 175, the insured asserted that because the insurer conducted a minor inquiry into the decedent's application just prior to his death and accepted his premium deposit, it was estopped from subsequently making an investigation after his death. The court held that "[t]he conditional receipt, however, ma[de] it clear that since the insurer had not actually delivered a policy it could conduct an investigation which could result in a denial of coverage. It is to the applicant's benefit that he retain coverage as of the date of signing the application and this is provided for by initially issuing a receipt. Only in the event of some significant change (e.g., a material misrepresentation) is coverage subsequently denied." *Garde*, 842 F.2d at 179.

In *McKinney v. Country Mutual Insurance Co.* (1987), 154 Ill. App. 3d 854, 507 N.E.2d 940, the issue was whether or not the insurer's actions in cashing the plaintiff's premium check, which it received after the insurance policy had lapsed, but before it had terminated, constituted an acceptance or approval of the plaintiff's offer to purchase insurance. This court held that the insurer's actions did not constitute an acceptance of plaintiff's offer, finding that, under the circumstances, an insurance company should be allowed a reasonable amount of time to decide whether to accept or approve a late premium payment which constitutes an offer to purchase insurance. (*McKinney*, 154 Ill. App. 3d 854, 507 N.E.2d 940.) "Acceptance occurs in

this context only if an insurance company retains a premium payment for an unreasonable length of time or otherwise manifests an intention to approve a late payment." (*McKinney*, 154 Ill. App. 3d at 858, 507 N.E.2d at 942.) Although the defendant in *McKinney* automatically deposited plaintiff's payment, it promptly reviewed the file and made the decision not to reinstate the policy. *McKinney*, 154 Ill. App. 3d 854, 507 N.E.2d 940.

In this case, it is undisputed that Time received and negotiated the decedent's check, representing payment for the premium due April 1, 1986, on June 16, 1986, and that it did not tender a refund until November 10, 1986. The reason Time did not attempt to refund the premium for 147 days is twofold. First, it was waiting to receive the decedent's supplemental application to determine whether it contained evidence of insurability, an intention manifested by Time to the decedent in its June 24, 1986, letter. Time did not receive the decedent's supplemental application until July 28, 1986, and as soon as it did, it reviewed the application and reinstated the policy the following day. Secondly, Time, upon learning on August 30, 1986, that the decedent had died, began an investigation and subsequently discovered fraud in that decedent had materially misrepresented his health, inducing Time to reinstate his policy. Furthermore, Time, having been induced to reinstate the policy, was entitled to keep the premium which it believed it had earned until such time as defendant gave notice of the decedent's death. In fact, rather than advise Time of the decedent's death on July 29, 1986, or soon thereafter, defendant paid the July 1, 1986, quarterly premium on August 4, 1986, after the decedent had already died.

Under these facts, Time is not estopped from terminating the policy since estoppel requires some prejudicial reliance by the insured. There can be none here. Defendant cannot now claim that she relied to her detriment on Time's acceptance of the check when the decedent knew that the policy had lapsed, applied for reinstatement, and failed to disclose his extensive medical history which was material to his supplemental application.

■ Defendant next contends that Time has not sustained its burden of proving that it properly effectuated a termination of the decedent's policy within six months of April 1, 1986, the due date of the defaulted premium. More specifically, defendant states that the burden is on the insurer to prove that the policy was cancelled and that the notice required by section 234(1) of the Code (Ill. Rev. Stat. 1985, ch. 73, par. 846(1)) was properly served on the insured within the req-

uisite time period. *Cullen v. North American Co. for Life & Health Insurance* (1988), 176 Ill. App. 3d 643, 531 N.E.2d 390.

Section 234(1) of the Code governs the declaration of lapse of a life insurance policy and provides in pertinent part:

> "No life company doing business in this State shall declare any policy forfeited or lapsed within six months after default in payment of any premium installment or interest or any portion thereof, nor shall any such policy be forfeited or lapsed by reason of nonpayment when due of any premium, installment or interest, or any portion thereof, required by the terms of the policy to be paid, within six months from the default in payment of such premium, installment or interest, unless a written or printed notice stating the amount of such premium, installment, interest or portion thereof due on such policy, the place where it shall be paid and the person to whom the same is payable, shall have been duly addressed and mailed with the required postage affixed, to the person whose life is insured, or the assignee of the policy, (if notice of the assignment has been given to the company) at his last known post office address, at least fifteen days and not more than forty-five days prior to the day when the same is due and payable, before the beginning of the period of grace ***. Such notice shall also state that unless such premium or other sums due shall be paid to the company or its agents the policy and all payments thereon will become forfeited and void, except as to the right to a surrender value or paid-up policy as provided for by the policy. The affidavit of any officer, clerk or agent of the company or of any one authorized to mail such notice that the notice required by this section bearing the required postage has been duly addressed and mailed shall be presumptive evidence that such notice has been duly given." Ill. Rev. Stat. 1985, ch. 73, par. 846(1).

Section 234(1), therefore, requires that notice be given before the premium becomes due, not when a premium has not been paid. (*First National Bank v. Mutual Trust Life Insurance Co.* (1986), 149 Ill. App. 3d 743, 500 N.E.2d 1128, *aff'd* (1988), 122 Ill. 2d 116, 522 N.E.2d 70.) A life insurer must properly serve the insured with the requisite notice of premium due at least 15 and not more than 45 days prior to the premium due date, or it will be foreclosed from forfeiting or lapsing the policy for nonpayment of a premium for a six-month period. Ill. Rev. Stat. 1985, ch. 73, par. 846(1); *Cullen*, 176 Ill. App. 3d 643, 531 N.E.2d 390.

Defendant asserts that since the subject premium payment was due on April 1, 1986, decedent's policy could not have been effectively forfeited or lapsed before October 1, 1986, if the proper notice of premium renewal was not served. In that event, defendant contends, the policy would have been in full force and effect at the time of decedent's death on July 29, 1986. Acknowledging that the statute provides for a presumption that the notice was served if an affidavit of a proper party is produced, defendant alleges that Time failed to produce such an affidavit or to provide any other competent evidence showing that the notice requirement under section 234(1) of the Code was followed. Defendant further points out that in *Cullen* the insurer's production of a blank sample notice was held insufficient to sustain its burden of proof.

It is well established "that a party can, by his own testimony, make a judicial admission which conclusively precludes assertion of a contrary position." (*Dayan v. McDonald's Corp.* (1984), 125 Ill. App. 3d 972, 983, 466 N.E.2d 958, 967.) In her own affidavit, defendant stated that if she were called to testify, her testimony would include the following: "That I am familiar with the quarterly premium payment notices that my husband, John W. Vick and I received from the plaintiff and a copy of one is attached hereto as Exhibit C, and the information contained therein was contained on the premium payment notices for payments due January 1 and April 1, 1986 and prior payments. That on June 10, 1986 I prepared and mailed a check number 354, payable to Time Insurance, in the sum of $103.20, to the plaintiff at their Milwaukee office, together with the quarterly premium notice for the policy premium due April 1, 1986."

Therefore, by her deliberate and unequivocal sworn representations to the court that she received and mailed back to Time the April 1, 1986, premium notice, defendant has removed from contention the issue as to whether Time complied with the notice requirement pursuant to section 234(1) of the Code. *Dayan*, 125 Ill. App. 3d 972, 466 N.E.2d 958.

Notably, the foregoing notice with which defendant is familiar contains the following language:

"Notice: If the premium as hereon stated is not paid when due, or within the period of grace thereafter as provided in the policy, the policy and all payments thereon will become forfeited and void, except as provided in said policy. The sending of this notice does not waive any lapse of the policy because of nonpayment of any previous amount due thereunder, or does

not alter or waive any of the conditions or agreements contained in the policy."

This notice comports with the requirements of section 234(1) of the Code and is evidence of the fact that Time properly advised the decedent as to the ramifications of a failure on his part to pay the premium in a timely manner.

Defendant argues additionally that although she had received the notice, Time failed to prove that it had been sent at least 15 days and not more than 45 days prior to the due date. The deposition transcript of Reindl, however, reveals the following colloquy between Reindl and defense counsel concerning the subject notice:

"Q. And do you have any documentation to show when any of these notices were sent in this particular case?

A. Yes.

Q. When were they?

A. This is direct bill premium notices.

* * *

A. March 8th, a premium notice was sent to John Vick, 4344 West Sturm [sic], Chicago, Illinois, 60639.

Q. Regarding premium due April 1st, '86?

A. Regarding premium due April 1st, 1986."

Reindl's testimony, therefore, indicates that the premium notice at issue was sent 24 days prior to the due date.

We find that the deposition of Time's employee Reindl, which was conducted by defense counsel, satisfies the affidavit requirement of section 234(1). In addition, we find reasonable Time's submission that the word "Sturm" as it appears in the above excerpt was erroneously transcribed by the court reporter and should read "Drummond," in light of the other correspondence contained in the record from Time to the decedent which is addressed to him at "Drummond."

Finally, defendant's reliance on *Cullen* is misplaced, as it is factually distinguishable from the present case. Here, unlike *Cullen*, not only did defendant acknowledge receipt of the subject premium notice, she even admitted mailing it back to Time along with her payment. Therefore, defendant's contention as to timeliness is without merit as Time has amply demonstrated its compliance with the notice requirement pursuant to section 234(1) of the Code.

In sum, there exists no genuine issue as to any material fact as the undisputed facts presented herein demonstrate that Time neither waived its right to terminate nor is estopped from terminating the subject policy for nonpayment of the premium due April 1, 1986. Furthermore, Time sustained its burden of proving that it properly effec-

tuated the policy's termination. Therefore, the subject policy properly lapsed, and the decedent's estate is not entitled to the policy's proceeds. "[C]ertain facts [that] are not in dispute with respect to the terms of a contract, the construction of the contract and its effect on insurance coverage are questions of law which can properly be determined on a motion for summary judgment." *Northern Life Insurance Co. v. Ippolito Real Estate Partnership* (1992), 234 Ill. App. 3d 792, 801, 601 N.E.2d 773, 779.

For the reasons stated herein, the judgment of the circuit court of Cook County granting summary judgment in favor of Time Insurance and denying defendant's motion for summary judgment is affirmed.

Judgment affirmed.

RAKOWSKI and GIANNIS, JJ., concur.