In the

# United States Court of Appeals
## For the Seventh Circuit

No. 25-1315

FAYEZ DAHLEH,

*Plaintiff-Appellant,*

*v.*

MINNESOTA LIFE INSURANCE COMPANY,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:22-cv-06771 — **Jeremy C. Daniel**, *Judge.*

ARGUED SEPTEMBER 9, 2025 — DECIDED JANUARY 20, 2026

Before ROVNER, HAMILTON, and SCUDDER, *Circuit Judges.*

HAMILTON, *Circuit Judge.* This appeal presents a variation
on the long-controversial practice of investing in life insur-
ance policies on the lives of others. See generally *Sun Life As-
surance Co. of Canada v. Wells Fargo Bank, N.A.*, 44 F.4th 1024,
1031–34 (7th Cir. 2022). Plaintiff Fayez Dahleh bought an ex-
isting policy on the life of one Gilda Perlas, a person with
whom he had no known prior relationship but whose original
purchase of the policy provided the required insurable

interest. Holders of otherwise valid policies may sell them to strangers as investments. See *id*. at 1031–32 (summarizing Illinois case law). Dahleh bought Mrs. Perlas's policy in July 2019. The policy was called a "flexible premium universal life insurance policy." It let the policyholder choose and vary the amount of insurance in force, and, within limits, the amount of premiums to be paid. The policy also allowed the policyholder to set the schedule for paying premiums.

After Dahleh bought the policy, the policy's account often contained insufficient funds to pay the monthly account charges that defendant Minnesota Life required to be paid to keep the policy in force. Each new shortage triggered a two-month grace period. For several years, Dahleh made payments right before the end of each grace period to keep the policy in effect at the lowest possible cost. But in February 2022, Dahleh failed to make a payment before a grace period ended. Minnesota Life canceled the policy.

Dahleh filed this suit alleging that Minnesota Life improperly canceled the policy without providing the notice or six-month grace period required under 215 Ill. Comp. Stat. 5/234 before certain types of life insurance policies are canceled. The district court granted summary judgment in favor of Minnesota Life. We affirm. The undisputed facts show that the required premiums for this policy were payable in monthly intervals, exempting this policy from the notice and grace-period requirements of 215 Ill. Comp. Stat. 5/234.

I.   *Factual and Procedural Background*

   A.  *Facts for Summary Judgment*

On January 10, 2012, Minnesota Life Insurance Company issued a life insurance policy to Gilda Perlas. Mrs. Perlas

initially set the annual planned premium at $60,000. This policy combined pure insurance protection with investment features. It was a flexible premium universal life insurance policy, meaning that the policyholder could vary "the amount or timing of one or more premium payments or the amount of insurance." Ill. Admin. Code tit. 50, § 1411.20. This specific type of plan also allowed Mrs. Perlas to take out policy loans against the insurance policy after its one-year anniversary. The policy's accumulation value served as collateral for a policy loan.

For this type of policy, the accumulation value is the sum of all the various accounts comprising the policy, including indexed and fixed accounts. Any planned premiums that the policyholder paid for the policy also contributed to the accumulation value. Minnesota Life used the accumulation value to cover the policy's required monthly policy charges. These policy charges covered the administrative expenses and costs of coverage needed to keep the policy in force, and they were due on every monthly policy anniversary.

Given the flexible nature of the policy, a policyholder could choose to plan not to make any premium payments for the policy, at least for a time. In that case, Minnesota Life deducted the monthly policy charges from the policy's accumulation value. If the accumulation value was insufficient to cover the monthly charges as of the monthly policy anniversary date, Minnesota Life started the clock on a 61-day grace period. During the grace period, Minnesota Life kept the policy in effect, allowing the policyholder to remedy the default by paying a late premium equal to three times the total of the monthly charges by the end of the grace period. When a grace period was triggered, Minnesota Life sent a required payment

notice to the policyholder indicating the due date and payment required to keep the policy in force. The required notice also said that if the total amount due were not received by the last day of the grace period, "the policy will terminate, except as to the right to any cash surrender value or nonforfeiture benefit."

Mrs. Perlas paid the annual planned premium for the first two years after the policy was issued. Over the next three years, Mrs. Perlas made no planned premium payments on the policy, allowing the policy's accumulation value to cover the policy's required monthly charges. In March 2014, Mrs. Perlas took out a $73,796.75 policy loan against the policy's value, significantly reducing the policy's accumulation value. In June 2017, she changed her annual planned premium to zero, as permitted by the flexible premium feature of the policy.

Two years later, in July 2019, Mrs. Perlas informed Minnesota Life that she was designating plaintiff Fayez Dahleh as the new owner of the policy. The ownership forms indicated that Dahleh was Mrs. Perlas's creditor, but we have no further details on that topic.

After Dahleh became the policyholder, the accumulation value often, but not always, fell below the amount required to pay the policy's required monthly charges, triggering many grace periods with required payment notices sent to Dahleh. From December 2019 to February 2022, there were only three months when the policy's accumulation value was sufficient to pay the monthly charges. When the accumulation value was insufficient to cover the monthly costs, triggering a grace period, Dahleh paid online or by telephone just before the

grace period ended, sometimes even on the last day of the grace period.

In December 2021, the flexible policy had in effect a death benefit of a little more than $700,000. On December 10, 2021, the monthly policy anniversary, the accumulation value was again insufficient to cover the monthly charges. As a result, Dahleh received a required payment notice dated December 10, 2021 indicating the due date, February 9, 2022, and payment amount, $5,839.78, needed to prevent termination of the policy. A month later, on January 9, 2022, Minnesota Life sent a second required payment notice to Dahleh with the same information.

This time, however, Dahleh did not pay the owed amount online or by telephone. Instead, Dahleh asserts—and we accept his version of the facts for purposes of summary judgment—he mailed a check before the expiration date. But Minnesota Life never received the payment. As a result, Minnesota Life terminated the policy on February 9, 2022.

On February 20, 2022, plaintiff's son called Minnesota Life to ask how to remedy the default to maintain the policy. The company told him that the policy had already been terminated and could not be reinstated.

B. *215 Ill. Comp. Stat. 5/234*

The Illinois Insurance Code requires insurance companies to provide certain notice to policyholders before terminating a life insurance policy for failure to pay premiums. 215 Ill. Comp. Stat. 5/234. This section applies to policies that will be terminated "by reason of nonpayment when due of any premium, installment or interest, or any portion therefore, required by the terms of the policy to be paid." 215 Ill. Comp.

Stat. 5/234(1). The statute does not define the terms premium, installment, or interest.

Section 234(1) provides that the insurer must give a policyholder written or printed notice of the premium amount due and how to pay no less than 15 days and no more than 45 days before such payment is due. The notice must further include that failure to pay the amount due will result in termination of the policy, except as the policy allows for the right to a surrender value or a paid-up policy. If the insurer fails to satisfy these notice requirements, Section 234(1) requires the insurer to provide a six-month grace period for the policyholder to cure the default, during which the policy will not lapse. The statute carves out an exception to the notice and grace-period requirements, however, for policies "upon which premiums are payable monthly or at shorter intervals." 215 ILCS 5/234(2).

C. *Procedural History*

On December 2, 2022, plaintiff Dahleh filed this case in federal court seeking a declaratory judgment under Illinois law that his life insurance policy on Mrs. Perlas remained in force. The federal courts have jurisdiction based on the parties' different citizenships and the amount in controversy. 28 U.S.C. § 1332. Plaintiff claimed that Section 234(1) applies to his insurance policy and that Minnesota Life failed to send proper notice under the statute, meaning that termination of the policy violated the statute and was ineffective, leaving the policy in force.

The parties filed cross-motions for summary judgment. The district court granted Minnesota Life's motion for summary judgment, finding that Section 234(1) applied to the

policy at issue, but concluding that Minnesota Life's letter providing payment notice satisfied the statute such that no six-month grace period was required. Plaintiff has appealed.

II. *Analysis*

We review de novo the district court's grant of summary judgment. *Life Plans, Inc. v. Security Life of Denver Ins. Co.*, 800 F.3d 343, 348–49 (7th Cir. 2015). We approach the issue here in two steps: first, whether the policy's required charges were premiums within the meaning of Section 234; and, second, if so, whether the policy was exempt from the statute's notice and grace-period requirements because it fit into the statute's exception for policies requiring monthly or shorter-interval premiums. These questions are governed by Illinois law, which has not often dealt with the threshold question of what kinds of payments constitute premiums under this statute. See *Olas v. ReliaStar Life Ins. Co.*, 712 F. Supp. 3d 1086, 1091 (N.D. Ill. 2024) (noting that "[t]he scant case law on [what constitutes a monthly premium under Section 234] isn't particularly helpful"). We do not agree with the district court that Section 234's notice requirements apply to the policy here. Instead, we conclude that the policy's required charges function as premiums under the statute, but that they fall into the monthly-or-shorter exception to the notice and grace-period requirements. See 215 Ill. Comp. Stat. 5/234(2). Accordingly, Minnesota Life was not required to satisfy the statutory notice and grace-period requirements, so we affirm the judgment for Minnesota Life.

A. *Section 234 Premium*

We begin by determining whether the required charges under Dahleh's Minnesota Life policy were premiums within

the meaning of Section 234. As a federal court sitting in diversity jurisdiction, we are guided by Illinois law in interpreting this statute. *Sun Life Assurance Co. of Canada*, 44 F.4th at 1031.

The Illinois legislature has not indicated that the definition of a premium under this statute should differ from the ordinary meaning of an insurance premium. "[W]hen a payment is required to maintain an insurance policy, and when making that payment is sufficient to maintain the policy for some period without requiring some additional payment, it qualifies as a premium under that term's common meaning." *Cooke v. Jackson Nat'l Life Ins. Co.*, 243 F. Supp. 3d 987, 996 (N.D. Ill. 2017), rev'd on other grounds, 919 F.3d 1024 (7th Cir. 2019).

Here, Minnesota Life refers to premiums as the planned amount the policyholder pays for this policy, which it distinguishes from the required policy charges necessary to keep the policy in force. Because the flexible premium policy allows the policyholder to set the amount and frequency of the premium payments, defendant argues that Mrs. Perlas's decision to change her annual planned premium payment to zero makes Section 234 inapplicable. But we see nothing in the statute that indicates the legislature intended to exempt entirely from the statute flexible life insurance policies like the one at issue here.

Instead, we look to whether the required policy charges functioned in substance as premiums—payments needed to keep the policy in force—under the statute. The required charges covered the costs of insurance and other administrative expenses that Minnesota Life required to maintain coverage. If the policy did not have an accumulation value sufficient to cover the required payments, the grace period was triggered, which allowed the policyholder to cure

the default by paying the owed amount. Without payment, the policy would terminate. Further, even if the policyholder paid his planned premiums, Minnesota Life still warned that "it is possible that the Policy may terminate before the death of the insured due to changes in interest credited, and monthly charges." In other words, regardless of how Minnesota phrased its policy, the required charges were in substance premiums "required by the terms of the policy to be paid," such that the policy would lapse "by reason of nonpayment." 215 Ill. Comp. Stat. 5/234(1). Because these required charges were premiums under the statute, we next determine whether the exception in Section 234(2) applies.

B. *Monthly-or-Shorter Exception*

The notice and grace-period requirements of Section 234(1) do not apply to policies with premiums payable in monthly or shorter intervals. 215 Ill. Comp. Stat. 5/234(2). The district court held that the Section 234(2) exception does not apply but that Minnesota Life's required payment notice was sufficient to satisfy Section 234(1). Our analysis need not go so far. Instead, we find that the monthly assessment of charges, meaning premiums, under this policy satisfies the Section 234(2) exception.

We explained above that the required account charges constitute premiums under Section 234. Because those charges are charged monthly on the policy anniversary date, the premiums needed to maintain the policy fall within the Section 234(2) exception. The plain language of Section 234(2)—that the premiums be "payable monthly or in shorter intervals"—does not restrict the section's application to when the policyholder chooses to make the required premium payments. Instead, we look to when the premiums were payable,

or when they were assessed and charged, which here was on each monthly anniversary of the policy. In effect, the Minnesota Life policy in this case allowed the policyholder to accumulate a surplus in an account with the company, and such surplus amounts could be used to pay the required monthly charges. That flexibility did not change the fact that the charges were assessed and payable every month, either from the policy's accumulated value or in the form of a new payment.

To escape the Section 234(2) exception, plaintiff Dahleh argues that the grace-period process, at least as he used it to delay his payments, made the premium effectively a quarterly premium rather than a monthly one. He bases this argument on the fact that the grace period was 61 days and the required payment was three times the required monthly charges. We reject this theory. The policy provided that the required charges that constituted the premiums for this policy were "assessed in advance on the policy date and at every monthly policy anniversary." The grace period was triggered only when the policyholder missed the monthly payment, whether from the surplus accumulation account or from a new payment. For example, in March 2020, October 2020, and May 2021, Dahleh had sufficient funds in the policy's accumulation account to pay the required charges, so the grace period was not triggered for those months. The grace periods did not show that the premiums were payable quarterly. They were instead merely a consequence of plaintiff's high-risk choice to keep insufficient funds in the account to cover the required charges on their due dates and to use every last day of each grace-period. In substance, the required charges were still payable monthly.

Further, if we were to adopt plaintiff's position that Section 234's notice requirements apply to this policy, the result would lead to an impossible dead end for an insurer trying to comply with the law when a policyholder failed to make required payments. Where Section 234 applies, it "requires a life insurance carrier to provide notice of an overdue premium to a policyholder before the company can lawfully cancel a policy." *Hotaling v. Chubb Sovereign Life Ins. Co.*, 241 F.3d 572, 579 (7th Cir. 2001). By its terms, Section 234 requires the insurer to provide appropriate notice to the policyholder between 15 and 45 days "before the beginning of the period of grace." 215 Ill. Comp. Stat. 5/234(1); *Time Ins. Co. v. Vick*, 250 Ill. App. 3d 465, 474, 620 N.E.2d 1309, 1316 (1993) ("Section 234(1), therefore, requires that notice be given before the premium becomes due, not when a premium has not been paid."), appeal denied, 153 Ill. 2d 570, 624 N.E.2d 817 (1993).

The grace period here began on the monthly policy anniversary when there were insufficient funds in the policyholder's account to cover the required monthly charges. If Section 234(1) applied here, plaintiff's position would mean that the insurer violated the statute by failing to notify a policyholder that he was in default at least fifteen days *before he was in default*. That's nonsense. Because the required charges were due monthly, and because the insurer could not know whether the account would have sufficient funds to pay the required charges until the date the charges were due, applying this statute here would require the insurer to provide notice of the hypothetical curative payments before Minnesota Life even knew the grace period had been triggered. The Section 234(2) exception works to prevent such a confusing conundrum by exempting the circumstances present in this

case, as well as more typical life insurance policies with monthly premium requirements.

Accordingly, defendant was not required by Section 234 to provide statutory notice before terminating plaintiff's policy. There are no further disputed issues of material fact that preclude summary judgment here. Minnesota Life properly terminated the policy for failure to pay premiums as required.

The judgment of the district court is AFFIRMED.